No. 45,577

ROBERT L. LEIKER, *Appellee,* v. MANOR HOUSE, INC., and AMERICAN
EMPLOYERS INSURANCE COMPANY, *Appellees and Cross Appellants,*
and THE SECOND INJURY FUND OF KANSAS, *Appellant.*

(457 P. 2d 107)

Opinion filed July 17, 1969.

*Warren R. Southard,* of Wichita, argued the cause, and *Walter A. Sawhill,* of Wichita, was with him on the brief for appellant The Second Injury Fund of Kansas.

*John Prather* and *Philip Kassebaum,* of Wichita, argued the cause, and *John T. Conlee, Douglas D. Johnson, John E. Rees, Robert T. Cornwell, Willard S. Thompson, Wayne Coulson, Paul R. Kitch, Dale M. Stucky, David W. Buxton, Richard I. Stephenson, Donald R. Newkirk* and *Gerrit H. Wormhoudt,* of Wichita, were with them on the brief for respondents Manor House, Inc. and American Employers Insurance Company.

*Clarence R. Sowers, John W. Sowers, Davis C. Carson,* and *James P. Johnston,* of Wichita, were on the brief for claimant.

The opinion of the court was delivered by

FATZER, J.: This is a workmen's compensation case. The point at issue is whether all compensation awarded the claimant was properly ordered paid from the Second Injury Fund (K. S. A. 44-566, *et seq.*) as directed by the district court.

The claimant, Robert L. Leiker, commenced a proceeding before the workmen's compensation director to recover compensation as a result of an injury he sustained to his low back and left knee on August 19, 1966, while employed by Manor House, Inc., Wichita, Kansas. The claimant was warehouse foreman, delivery man, and ran the warehouse.

Previously, and in July 1965, and while employed by Manor House, the claimant sustained an injury to his low back and his left knee when he stepped off a dock backwards. He was treated by C. P. Huey, a chiropractor, and he saw Dr. Rombold at the Wichita Clinic. Dr. Rombold took x-rays of the back and the left knee in 1965, and recommended the claimant have surgery on his left knee. The claimant received no compensation for this injury.

At the hearing before an examiner which commenced March 24, 1967, the parties stipulated they were covered by the Workmen's Compensation Act; that the claim for compensation was timely filed; that the respondent's insurance carrier was the American Employers Insurance Company, and that on April 3, 1966, the respondent and its insurance carrier filed notice with the workmen's compensation director (Form 88, Notice of Handicapped Employees, prescribed by the Director of Workmen's Compensation) that the claimant was a "handicapped employee" and was employed January 19, 1958, and listed the nature of his impairment as:

"Osteochondritis of the left knee. Narrow intervertebral disc at L/4-L/5 interspace, congenital abnormality lumbo sacral level, arthritic changes of lumbar spine."

On October 23, 1967, the examiner made findings of fact that on August 19, 1966, the claimant sustained personal injury by accident arising out of and in the course of his employment with respondent, and further found:

". . . that except for a preexisting physical condition which this examiner determines to be a *physical deformity within the meaning of The Second Injury Fund*, both in his back and knee, together with some arthritic condition, which is within the meaning of The Second Injury Fund provisions of the Workmen's Compensation Act, said claimant would not have suffered the disability which resulted from his injury." (Emphasis supplied.)

"It is further found that . . . the claimant has suffered a 40 percent permanent partial general disability as a result of the accident, and inasmuch as the claimant was hired under the handicapped employees provision of the Workmen's Compensation Act, benefits to the claimant should be paid from The Second Injury Fund."

"It is further found that the Form 88 filed with the Director on April 3, 1966, as a handicapped employee, was sufficient under the law."

In accordance with his findings, the examiner entered an award of compensation in favor of the claimant and against the Second Injury Fund for 33 weeks of temporary total disability at the rate of $42 per week, and for 379 weeks at the rate of $32.13 per week for a 40 percent permanent partial general disability, and ordered payment in a lump sum of temporary and permanent partial disability, then due and owing, of $1,559.25. Medical and hospital expenses were allowed the claimant and charged against the Second Injury Fund.

On October 24, 1967, the Second Injury Fund made written request to the director to review the examiner's award pursuant to K. S. A. 44-551. Upon review, and on March 29, 1968, the director made findings of fact and modified the examiner's award. His findings read, in part:

". . . The director finds that the filing of the Form 88 by the respondent, Manor House, Inc., with the director on April 3, 1966, was sufficient. Although the said filing does not specifically state which of the sixteen types of handicaps listed in K. S. A. 44-566 the claimant had at the time of the filing, it does describe in sufficient detail said handicaps to meet the general requirements of the statute. The director finds that the claimant's knee problems were only temporarily aggravated by the accident he sustained on August 19, 1966; that the operation on said knee was not caused by said accident but that the operation was needed and recommended prior to said accident and that claimant has suffered no further disability to his knee as the result of said accident.

"The director further finds that the permanent partial disability of the claimant, in view of the above findings in the regard to claimant's knee and in view of the medical testimony, is 30% of the body as a whole.

"The director further finds that the accidental injuries incurred by the claimant to his back on August 19, 1966, aggravated an existing condition but that the claimant's back would have been injured regardless of said pre-existing condition and that therefore compensation for claimant's disability should be apportioned between the (Second Injury Fund and Manor House) . . . on a 50-50 basis, that is to say claimant's preexisting handicap has contributed 50% of his present disability and therefore the . . . Second Injury Fund should assume one-half of the reponsibility for said disability.

"It Is Therefore Ordered, Decreed and Adjudged That the award entered herein by Examiner Lee R. Meader on October 23, 1967, be and the same is hereby modified as follows: An award of compensation is hereby made in favor of the claimant, Robert L. Leiker, and against the . . . Second Injury Fund and against the respondent Manor House, Inc. and its insurance carrier, American Employers Insurance Company, as the result of an accidental injury occuring on August 19, 1966, for 413 weeks of compensation, after deducting the two weeks claimant worked following the accident. Claimant is awarded temporary total compensation at the rate of $42 per week from September 8, 1966 through April 25, 1967, a total of 33 weeks or the sum of $1,386.00, $630.00 of which has been paid, leaving a balance due and owing to be $756.00. Further award is made in favor of the claimant and against the (Second Injury Fund and Manor House) . . . and the insurance carrier for 380 weeks permanent partial disability based upon a 30% disability of the body as a whole at the rate of $24.10 per week. As of March 27, 1968, there is due and owing the claimant 48 weeks of permanent partial disability compensation at the rate of $24.10 per week, or the sum of $1,156.80, making the total amount presently due and owing the claimant to be $1,912.80, which amount is ordered paid in a lump sum. The balance of said award, 332 weeks, is ordered paid at the

rate of $24.10 per week until paid in full or until further order of the director. An award of medical treatment for claimant's knee operation is denied.

"It is further ordered that one-half of all compensation and all medical expenses awarded herein shall be paid by the . . . Second Injury Fund and one-half by the respondent Manor House, Inc. and its insurance carrier . . . It is further ordered that . . . Second Injury Fund reimburse the respondent Manor House, Inc., and its insurance carrier . . . for one-half of all compensation and all medical payments which have heretofore been paid by said Manor House, Inc. and American Employers Insurance Company upon proper evidence thereof being presented to . . . Second Injury Fund. In all other respects said award of October 23, 1967, is hereby affirmed.

On April 16, 1968, Manor House and its insurance carrier perfected an appeal from the director's award to the district court.

On June 26, 1968, the district court heard the appeal, and sustained the director's award with respect to his finding the claimant sustained personal injury by accident on August 19, 1966; that the amount of the claimant's average weekly wage was $133.87; that the parties were governed by the Workmen's Compensation Act; that written claim and notice were filed within the statutory period, and further:

"6. Claimant was properly listed as a handicapped employee, on Form 88, and same was filed with the Workmen's Compensation Director on April 3, 1966, as provided by law.

"7. Except for the preexisting physical condition which is determined to be a physical deformity within the meaning of the law, the claimant would not have suffered the disability which resulted from the injury.

"8. The claimant sustained a 30 percent permanent partial general disability and compensation therefore is assessed against the Kansas Second Injury Fund."

The court further found that the medical and hospital expenses incurred in connection with the claimant's injury on August 19, 1966, should be assessed against the Second Injury Fund; that the medical and hospital expenses incurred by the claimant for the operation on his left knee, which were unrelated to his injury on August 19, 1966, should be paid by Manor House; that the Second Injury Fund should reimburse Manor House for claimant's drugs of $5.15, and should also reimburse the insurance carrier in the sum of $1,448 for compensation theretofore paid the claimant. An appropriate judgment was entered for the allowance and payment of temporary total and permanent partial disability and for medical and hospital expenses in harmony with the district court's findings.

Following the entry of judgment, the Second Injury Fund per-

fected this appeal. Thereafter, Manor House and its insurance carrier perfected their cross-appeal.

The Second Injury Fund first contends the district court erred in its finding No. 6 that Form 88 contained a proper listing and description of claimant's pre-existing disabilities. It argues the form did not list any of the injuries or diseases specified in K. S. A. 44-566 to obtain the protection afforded. It states Manor House made no claim otherwise in the court below, but was content to try to elicit an opinion from medical witnesses that the x-rays revealed some disease which amounted to, in the opinion of the witnesses, physical deformity.

The Second Injury Fund statute was first enacted in 1945 and is supplementary to the Workmen's Compensation Act. (*Polston v. Ready Made Homes*, 171 Kan. 336, 232 P. 2d 446.) Its purpose was to encourage the employment of persons with certain physical handicaps by relieving the employer in part from payment of compensation benefits in limited situations. The scope of the Second Injury Fund was greatly enlarged in 1961 by the Legislature. (L. 1961, Ch. 243, §§ 8, 9, now K. S. A. 44-566 and 44-567.) As amended, the declared purpose of the statute is to encourage the hiring of the handicapped. It expresses the idea of achieving this result in a manner that works a hardship on neither the employer nor the employee. Section 44-566 (4) defines a "handicapped employee," and reads:

"A 'handicapped employee' means one afflicted with or subject to any physical or mental impairment, or both, whether congenital or due to an injury or disease of such character the impairment constitutes a handicap in obtaining employment or would constitute a handicap in obtaining re-employment if the employee should become unemployed and his handicap is due to any of the following diseases or conditions:

"1. Epilepsy;
"2. Diabetes;
"3. Cardiac disease;
"4. Arthritis;
"5. Amputated foot, leg, arm or hand;
"6. Loss of sight of one or both eyes or a partial loss of vision of more than seventy-five percent bilaterally;
"7. Residual disability from poliomyelitis;
"8. Cerebral Palsy;
"9. Multiple Sclerosis;
"10. Parkinson's disease;
"11. Cerebral Vascular accident;
"12. Tuberculosis;

"13. Silicosis;

"14. Psycho-neurotic disability following treatment in a recognized medical or mental institution;

"15. Loss of or partial loss of the use of any member of the body;

"16. Physical deformity."

Previously, the Act included only a loss or partial loss of use of member of the body, such as an eye, arm, hand, leg or foot. (44-566[3].) As amended, it includes such loss of or the loss of use of a specific member of the body, and in addition it includes fifteen other specific categories of diseases or conditions which are in the general bodily disability area. The manifest purpose of the section is to remove completely from controversy the kind and number of prior "physical or mental impairments" which, "whether congenital or due to an injury or disease" could qualify as prior impairments if they were of such seriousness as to constitute a hindrance or obstacle to retaining employment or to obtaining re-employment if the employee should become unemployed. (2 Larson, Workmen's Compensation Law, § 59.32.)

K. S. A. 44-567 prescribes the conditions of liability of the Second Injury Fund, and reads:

"(a) An employer operating within the provisions of this act who employs a handicapped employee, as hereinabove defined, and who, prior to the occurrence of a compensable injury to a handicapped employee, files a notice thereof, together with a description of the handicap claimed with the workmen's compensation director shall be relieved of liability for compensation awarded or be entitled to an apportionment of the costs thereof as follows:

"(1) Whenever a handicapped employee is injured or is disabled or dies as a result of a compensable injury and the workmen's compensation director awards compensation therefor and when it appears to the satisfaction of the workmen's compensation director that the injury or the death resulting therefrom would not have occurred but for the pre-existing physical or mental impairment of the handicapped employee all compensation and benefits payable because of the disability or death shall be paid from the second injury fund.

"(2) Subject to the provisions of this act, as amended, whenever a handicapped employee is injured or is disabled or dies as a result of a compensable injury and the workmen's compensation director finds that the injury would have been sustained or suffered without regard to the employee's pre-existing physical or mental impairment but the resulting disability or death was contributed to by the pre-existing impairment, the workmen's compensation director shall determine in a manner which is equitable and reasonable and based upon medical evidence the amount of disability and proportion of the cost of award which is attributable to the employee's pre-existing physical

or mental impairment and the amount so found shall be paid from the second injury fund.

"(b) The provisions of this section shall apply only to cases where a handicapped employee, as defined in section 8 [44-566], subsection (4), or his dependents, claims compensation, as a result of an injury occurring after the effective date of this section. (c) The total amount of compensation due the workman shall be the amount for disability computed as provided in sections 44-510 and 44-511 of the General Statutes Supplement of 1959: *Provided,* That in no case shall the payments be less than seven dollars ($7) per week nor more than thirty-eight dollars ($38) per week."

The procedural requirements of the Act requiring registration of the claimed handicap are mandatory. Before the Fund is obligated to assume a part or all of the compensation awarded a handicapped employee as the result of a compensable injury, the employer is required to file a written notice with the director naming the handicapped person and describing the handicap claimed. (44-567[a].) The notice must be filed prior to the occurrence of a compensable injury and should be given on Form 88, "Notice Of Handicapped Employees," adopted by the director by Rule No. 51-1-19[e], and filed with the Revisor of Statutes pursuant to K. S. A. 77-415, *et seq.* The description of the handicap in the notice should conform to the impairments listed in 44-566 with detailed descriptions where possible, and the "nature of impairment" should be described in conformity with the director's footnote contained in Rule No. 51-1-19[e]. It is not necessary to furnish medical evidence of the handicap when filing the notice with the director, but such medical evidence will be required if the employer subsequently claims a listed handicap caused or contributed to a compensable injury to such employee. (Rule No. 51-1-19[e].) The burden of proving the employee was handicapped *as listed* with the director, and that such employee suffered a compensable injury which was caused or contributed to by the listed handicap, is on the employer. (Rule No. 51-1-19[b]; 44-567 [a] [1] and [2].)

As indicated, the purpose of the Act is to encourage employers to hire the handicapped, and the Legislature intended this to be achieved by shifting the increased burden of compensation from the employer to a Second Injury Fund which is funded by payments from insurance carriers and from legislative appropriations. The statute is remedial in character, and is not to be interpreted in any narrow, technical or illiberal manner. A liberal construction of its provisions should be indulged, if necessary, to give effect to the

purpose intended by the Legislature. (*Chapman v. Victory Sand & Stone Co.,* 197 Kan. 377, 416 P. 2d 754.)

If burdensome and technical filing requirements make it uncertain whether the employer has described an employee's handicap with sufficient specificity to obtain the protection of the Fund, he has a simple solution to the resulting problem. He may refuse to hire the handicapped and discharge those already employed. A technical construction of the Act would result in defeating the coverage the Legislature intended and might tend to make the Fund a "dead letter." As indicated, the Legislature intended to remove completely from controversy the kind and number of prior physical or mental impairments, whether congenital or due to injury or disease, and to permit employers to secure the protection of the Act by listing with the director the names of such employees and describing their handicaps. All of the handicaps within the coverage of the Act are fairly specific and clear except for the one listed as "physical deformity" which is ambiguous. Legislative definition of the term is obviously needed.

In the instant case, the listing of the claimant's pre-existing spinal impairment was that it was "congenital abnormality . . . arthritic changes of lumbar spine." Arthritis is a listed handicap within the coverage of the statute. (44-566 [4].) While the notice filed with the director on April 3, 1966, did not specifically state that osteochondritis of the left knee was listed as a physical deformity, the medical testimony was that such impairment constituted a physical deformity, and we are of the opinion the description of the claimant's pre-existing physical condition was sufficient to comply with 44-566 and to afford Manor House the protection of the Second Injury Fund.

The Second Injury Fund next contends the decision of the director under 44-567 is not subject to review by the district court. It argues that since the complete administration of the Fund is vested in the director, including the determination of the preliminary "but for" causation under 44-567 (*a*) (1) which is left "to the satisfaction of the director," with no provision for appeal to the district court from that "satisfaction," the director's determination that the claimant's injury on August 19, 1966, would have occurred regardless of any pre-existing impairment must stand. The contention is not meritorious.

The statutes to be construed in this appeal were the subject of a concise and comprehensive article by Mr. Alvin D. Herrington, of the Wichita Bar, entitled "Workmen's Compensation—The Second Injury Fund." (Vol. 35, J. B. K., 167.) The author states that our statutes pertaining to review of an examiner's decision by the director (44-551), and appeals of the director's decision to the district court (44-556), are undoubtedly applicable even though the Second Injury Fund statutes do not expressly provide for an appeal to and review by the district court. In a footnote, the author states:

"An interesting point might be raised as to whether or not the district court, on appeal, could change the director's decision under Kan. Stat. Ann. § 44-567 (a) (1) (1964). The statute provides that when it appears to the *satisfaction* of the director that the injury or death would not have occurred but for the pre-existing impairment, all benefits are to be paid from the fund. Can the district court decide whether the director should or should not have been satisfied or is it a subjective decision which only the director can make? Probably review by the district court is available, but the legislature's choice of words leaves some doubt." (p. 197.)

Section 44-556 provides in substance that any party to a workmen's compensation proceedings may appeal from any and all decisions, findings, awards, or rulings of the director to the district court of the county where the cause of action arose, upon questions of law and fact as presented and upon the transcript of the evidence and proceedings as presented, had and introduced before the director.

The statute was construed in *Johnson v. General Motors Corporation*, 199 Kan. 720, 433 P. 2d 585, and in a similar although not analogous situation, it was held the district court had authority on appeal to determine an application under 44-531 relating to lump sum redemption, which provides that the director "may, when he, in his sound discretion" determines that the employer shall redeem the award. In the opinion it was said:

". . . We do not believe that by the use of the words 'in his sound discretion' the legislature intended thereby to establish a separate procedural scheme on this one question, nor that it intended by the enactment of 44-531 to override the plain language in 44-556. In *Ross v. Lytle Co.*, 183 Kan. 825, 332 P. 2d 592, this court stated that 44-531 must be read together with other parts of the compensation act. We hold a district court has authority on appeal to determine an application under 44-531 for lump sum redemption of an award." (1. c. 724.)

It is apparent to us that a finding within "the sound discretion" of the director does not differ substantially from a finding "to the

satisfaction" of the director, or to a situation where "the workmen's compensation director finds" the injury would have been sustained without regard to the pre-existing impairment. As indicated, the Second Injury Fund is supplemental to the Workmen's Compensation Act, and we are of the opinion that all decisions of the director with respect to the administration of the Fund involve questions of law and fact, and are subject to review by the district court under the provisions of 44-556.

As previously noted, the 1961 amendment broadened the coverage of pre-existing impairments and did not limit second injuries to those causing total permanent disability. Section 44-567 provides for the liability and contribution of the fund and the apportionment of the costs of compensation. When an employer operating within the provisions of the Workmen's Compensation Act employs a handicapped person, and who, prior to the occurrence of a compensable injury to such employee, files a notice with the director of such employment together with a description of the handicap claimed, 44-567 (a) (1) provides that whenever a handicapped employee is injured or is disabled or dies as a result of compensable injury, and the director is satisfied that the injury or death would not have occurred "but for" the pre-existing impairment, "all" compensation awarded such employee because of the disability or death shall be paid from the Second Injury Fund. The words "but for" are used in the sense that the accident causing the disability or death would not have occurred *but for* the pre-existing impairment. In other words, under subsection (1) of 44-567 (a) and the director's Rule No. 51-1-19 (b), the burden of proving a causal relation between the handicap and the injury is on the employer. The accident must be the proximate cause of the disability or death and would not have occurred "but for" the pre-existing impairment. As Mr. Herrington states (*supra, op. cit.,* p. 169), "[i]t would appear that if the accident would not have happened without the handicap the test is met."

With respect to subsection (2) of 44-567 (a), if the director finds the injury would have been sustained without regard to the pre-existing impairment, but the resulting disability or death was contributed to by the pre-existing impairment, the statute provides that the director shall determine in a manner which is equitable and reasonable and based upon medical evidence, the amount of disability and apportion the costs of the award which is attributable

to the pre-existing impairment, and such amount shall be paid from the Second Injury Fund. Hence, where the previous impairment did not cause the subsequent injury, but the resulting disability was contributed to by the pre-existing impairment, the director shall apportion the cost of the award between the employer and the Second Injury Fund in a just and equitable manner, based upon the medical evidence. See, Kelly, Workmen's Compensation, 10 Kan. L. Rev., 347.

As indicated above, the examiner found that, "except for" the pre-existing impairment, the claimant would not have suffered the disability which resulted from his fall on August 19, 1966, and entered an award in favor of the claimant and directed that all compensation be paid from the Second Injury Fund. Upon review, the director found the claimant's knee problem was only temporarily aggravated by the accident; that the operation of the left knee was not caused by the accident but was needed and had been previously recommended, and that the claimant suffered no further disability to his knee as a result of the fall. The director further found that the injury to the claimant's back on August 19, 1966, aggravated a pre-existing condition, but that his back would have been injured regardless of said pre-existing condition, and directed that compensation awarded the claimant be apportioned between the Fund and Manor House on a 50-50 basis pursuant to 44-567 (a) (2).

On appeal, the district court found, in almost identical language used by the examiner, that "except for" the pre-existing impairment, which was determined to be a "physical deformity," the claimant would not have suffered the disability which resulted from the injury, and assessed all payments of compensation against the Second Injury Fund under 44-567 (a) (1). Thus, we are brought to the question whether the district court's finding is sustained by substantial competent evidence.

The record has been carefully and thoroughly examined and it contains no evidence produced by the claimant or any of the medical witnesses that the prior impairment caused the claimant's accident on August 19, 1966. On that date, the claimant and his helper were delivering furniture in Wichita. They were unloading a dresser which weighed approximately 350 pounds. The claimant had to step up onto the back of the truck because he could not reach the dresser from the ground. He lifted the dresser and had it on his right side, and when his helper stepped back, he started to step

down, and lost his balance and fell. When he fell, he had the dresser in such an awkward position that he twisted his back and it immediately started hurting. He also felt pain in his left knee. Dr. Schlachter testified "there is no history of a sudden severe pain in his back causing him to fall," and "there is no way that the back condition could have produced a condition that would have caused him to fall." Likewise, there is no evidence the left knee gave way. On the contrary, the claimant was carrying his end of the dresser on his right side and it was his right leg which supported the weight. Dr. Baehr testified that the claimant's pre-existing condition "did contribute to the fact that he did have this particular injury," however, none of his testimony may reasonably be construed as stating that the pervious impairment was the proximate cause of the claimant's fall.

We conclude there is no evidence in the record to support the district court's finding that the claimant's injury resulting from his fall on August 19, 1966, would not have occurred "except for" the pre-existing impairment of the claimant, and it erred in ordering the entire amount of compensation paid from the Second Injury Fund.

We now turn to Manor House and its insurance carrier's cross-appeal. It is contended the district court erred in awarding medical expenses to the claimant and against these respondents for the operation on his left knee. The record indicates the claimant's left knee was injured in July, 1965, in the course of his employment, and that Dr. Rombold took x-rays of the knee and recommended the claimant have surgery on it. No reason has been suggested why the medical expenses allowed the claimant for the operation were improper. We conclude the respondents have failed to affirmatively make it appear the district court erred in this respect.

The judgment of the district court is reversed with directions to apportion the payment of the award of compensation in a manner which is equitable and reasonable and based upon the medical evidence, and in doing so, it should give consideration to the apportionment heretofore made by the director.

It is so ordered.

FROMME, J., concurs in the result.

FATZER, J., concurring in part and dissenting in part: I express my concurrence in the court's reversal of this case for the reasons,

stated in the opinion, but I must respectfully dissent from what is held in paragraph 4 (2) of the syllabus and the corresponding portion of the opinion.

It is not a burdensome or technical requirement to hold that an employer describe the handicap of an employee with such specificity so as to relate his physical or mental impairment to the diseases or conditions prescribed in K. S. A. 44-566. The employer is possessed with knowledge of all medical evidence of a handicapped employee's prior impairment, and his notice should affirmatively disclose the impairment is one of the sixteen described in the statute. The description of the handicap should name or list the impairment, such as "arthritis," "cardiac disease," and "physical deformity." The latter term is clearly ambiguous and it is hoped the Legislature will define the coverage intended. Under the director's Rule No. 51-1-19 (*e*), the burden of proving the employee was handicapped *as listed* with the director and that it is a handicap enumerated in the statute, is on the employer.

In the instant case, I have no trouble with the listing of claimant's handicap with respect to his low back. As the court indicates, arthritis is one of the enumerated diseases or conditions of prior impairment. But the description of the impairment to the claimant's left knee should have been described as "physical deformity of the left knee resulting from osteochondritis." Clearly, a description of a prior impairment such as "back injury" or "knee injury" should not entitle an employer to the benefits of the Second Injury Fund, or permit the introduction of expert testimony to show the claimed injury is one of those listed in the statute.

FONTRON, J., joins in the foregoing concurring and dissenting opinion.