No. 47,426

GEORGE SCOTT, *Appellee*, v. DAY AND ZIMMERMAN, INC., *Appellant*, LIBERTY MUTUAL INSURANCE COMPANY, *Appellant*, and SECOND INJURY FUND, *Appellee*.

(529 P. 2d 679)

Opinion filed December 7, 1974.

*Randall D. Palmer,* of Keller, Wilbert, Palmer & Lassman, of Pittsburg, argued the cause and was on the brief for the appellants.

*Morris D. Hildreth,* of Becker, Hildreth & Eastman, of Coffeyville, argued the cause and was on the brief for the appellee, George Scott.

*W. J. Fitzpatrick,* of Independence, argued the cause and was on the brief for the appellee, Second Injury Fund.

The opinion of the court was delivered by

Owsley, J.: In a workmen's compensation case the district court found claimant George Scott to be totally and permanently disabled and entered an award against respondent Day and Zimmerman, Inc., and its insurance carrier. On appeal, respondent claims the evidence was insufficient to support the finding of the district court that claimant was totally and permanently disabled, and that the court erred in failing to make any findings, ruling, or judgment on the issue of the liability of the Second Injury Fund.

Claimant was a sixty-year-old man with only a fourth grade education. For most of his life he had been employed in heavy manual labor. On March 2, 1970, claimant was hired by respondent as a manual laborer at its plant in Parsons, Kansas. On March 12, 1970, respondent filed the required notice to show it had employed claimant as a handicapped employee, as directed by K. S. A. 44-567. Claimant's handicap was described on the form as "Physical deformity-spinal-varicose veins."

On October 9, 1970, claimant was working for respondent in a boxcar loading empty ammunition boxes on a conveyor, when a railroad engine backed against the car causing the conveyor to strike him in the low back area. He was in turn knocked into the wall of the boxcar.

After this incident claimant went to the bathroom where he testified that he urinated blood. He then reported to respondent's first aid station. The next day claimant went to his personal physician, Dr. LeRoy Alcox, who examined and X-rayed him, and later prescribed a back brace which he wore when he returned to work shortly thereafter.

On or about August 10, 1971, claimant again injured his back while lifting ammunition boxes at respondent's plant. Again, he reported to both respondent's medical facility and to Dr. Alcox. On November 2, 1971, he was released by Dr. Alcox to return to light work with the limitation that he not lift over fifty pounds. Respondent, however, refused to give claimant his job back until he could return to regular duty. Subsequently, claimant obtained work from Carothers Construction Company in Coffeyville, Kansas, as a concrete finisher. He was working for Carothers at the time his claim was tried before the workmen's compensation examiner. Timely claim was filed for compensation on the accidents of October 9, 1970, and August 10, 1971.

At the hearing Dr. Alcox stated he had been claimant's physician

since 1962, and had the opportunity to examine claimant after each of his accidents. According to his testimony, he found considerable muscle spasm and scoliosis of the lower spine, pre-existing arthritis of the dorsal and lumbar spine, and an unstable back in general. It was Dr. Alcox's opinion that both accidents aggravated the pre-existing arthritic condition and contributed to the disability of the claimant. Further, he testified that in his opinion claimant was totally and permanently disabled from doing any heavy manual labor, although with his back brace in place he could perform light work not requiring the lifting of objects weighing more than fifty pounds. He also stated that without the back brace claimant was one hundred percent disabled.

Dr. Stephen Ellis examined claimant on behalf of respondent. He testified that after examining claimant he was of the opinion claimant was suffering from chronic osteoarthritis of the spine, but that his injuries only temporarily aggravated this condition and he sustained no permanent injuries. He further testified he felt claimant had a general disability of only fifteen percent; however, it was his opinion claimant should not do heavy manual labor because it would cause pain in his back.

Believing claimant's present disability to be caused at least in part by his pre-existing spinal defect, respondent impleaded the Second Injury Fund and raised the issue at the workmen's compensation hearing as to the liability of that fund.

The examiner found claimant sustained a personal injury by accident on October 9, 1970, but that he suffered no further accidental injury in August, 1971. As a result of said accidental injury claimant was held to be temporarily totally disabled for a limited period, and fifteen percent disabled from securing work similar to that which he performed prior to his injuries. The examiner specifically found "[t]hat claimant was not a handicapped employee within the meaning of the act." The examiner also found the October 9, 1970, injury would have occurred regardless of his pre-existing defect. The director affirmed the examiner's award and findings.

On appeal the district court made the following findings and conclusions:

"The Court, having reviewed the record and authorities and received the briefs of the parties, finds that claimant sustained a personal injury by accident on October 9, 1970, when claimant was working at respondent's plant in Labette County, Kansas, causing claimant to be struck in his low back area

by a conveyor, knocking him against a wall; that the accidental injury sustained by plaintiff on October 9, 1970, arose out of and in the course of claimant's employment; . . . that claimant sustained personal injury by accident to his back on or about August 10, 1971, while working at respondent's plant in Labette County Kansas; . . . that the accidental personal injury sustained by claimant on or about August 10, 1971, arose out of and in the course of his employment; that a written claim for compensation was served on respondent September 24, 1971, within 200 days of March 16, 1971, the date of the last payment of compensation by respondent and insurance carrier for the injury which occurred on October 9, 1970, and was within 200 days of the accidental injury which occurred on August 10, 1971; . . . that as a result of the accidental injury claimant suffered on October 9, 1970, and the reinjury on August 10, 1971, claimant was temporarily totally disabled from doing any kind of work for the period from October 9, 1970, to and including January 25, 1971, and from August 11, 1971, to November 14, 1971; . . . that on November 2, 1971, Doctor Alcox, claimant's physician, released him to return to light work with the restriction that he not lift over 50 pounds; that on November 3, 1971, respondent determined that claimant could not return to work until he was able to return to regular duty without wearing back brace and with no restrictions on lifting, and that until such time he was not employable for his ordinary duties; that as a result of the accidental injuries, sustained by claimant on October 9, 1970, and reinjury on August 10, 1971, claimant is permanently and totally disabled from securing, performing, and retaining employment as a heavy manual laborer, which is the work that he performed for respondent prior to his injuries. . . ."

Respondent contends the district court erred in finding claimant to be suffering from a permanent total disability. This court has repeatedly held that the extent of a claimant's disability is a question of fact, and if the record discloses substantial competent evidence on which the district court could base its findings, we are bound by those findings. (*Meyersick v. Rodney Milling Co.*, 213 Kan. 678, 518 P. 2d 398; *Gray v. Beller*, 199 Kan. 284, 428 P. 2d 833.)

We have also repeatedly stated that the correct standard for determining disability of an injured workman is the extent to which his ability has been impaired to procure in the open labor market, and to perform and retain work of the same type and character as he was able to perform before he was injured. (*Webb v. Globe Construction Company*, 213 Kan. 681, 518 P. 2d 419, and cases therein cited.) The district court's finding of total permanent disability is supported by the testimony of Dr. Alcox. He stated claimant was totally and permanently disabled from doing any heavy manual labor; that with the back brace in place claimant could perform light work not requiring the lifting of objects weighing more than fifty pounds; and that without the back brace claimant was one hundred percent disabled.

The testimony of Dr. Alcox is sufficient in itself to provide the substantial competent evidence required to support the district court's finding of total permanent disability. The fact that part of claimant's present disability arises from a pre-existing disability does not prevent a recovery for total permanent disability. In *Poehlman v. Leydig*, 194 Kan. 649, 400 P. 2d 724, we said:

"In the absence of a statute to the contrary, if a workman's disability is precipitated by an accident arising out of and in the course of his employment, which disability in all probability would not have arisen but for such accident, regardless of pre-existing conditions the entire disability, both as to extent and duration, is within the injury for which the workmen's compensation act authorizes compensation." (Syl. ¶ 4.)

This case is also concerned with Second Injury Fund statutes. These statutes were originally enacted in 1945 to encourage the hiring of employees with certain physical handicaps by relieving the employer in part from the payment of compensation benefits to such employees in certain situations. The benefits under the original statutes were quite limited. The 1961 amendments greatly enlarged the scope of the Second Injury Fund. The definition of "handicapped employee" in K. S. A. 44-566 includes not only a loss or partial loss of a member of the body, but also a number of diseases and conditions which are in the general bodily disability area.

K. S. A. 44-567 provides that for the Second Injury Fund to apply the employer must file with the director a notice of his employment of a handicapped employee, including a description of the claimed handicap. This notice must be filed prior to the occurrence of a compensable injury. Subsection (1) of 44-567 (*a*) provides that whenever a handicapped employee is injured or dies as a result of a compensable accident, and the director is satisfied the injury or death would not have occurred "but for" the pre-existing impairment, "all" compensation and benefits payable because of the disability or death are payable from the Second Injury Fund. Subsection (2) provides if the director finds the injury would have been sustained without regard to the pre-existing impairment, but the resulting disability or death was contributed to by the pre-existing impairment, he shall determine in an equitable and reasonable manner and based upon the medical evidence, the amount of disability and cost of the award attributable to the pre-existing impairment; and the amount so found will be paid from the Second Injury Fund.

Respondent argues the district court erred in not holding that the

injury to the handicapped claimant would not have occurred "but for" his pre-existing physical impairment. The "but for" provision of the statute was construed in *Leiker v. Manor House, Inc.*, 203 Kan. 906, 457 P. 2d 107.

The reasoning in *Leiker* was based on proximate cause; that is, the incident or accident which resulted in injury must have been caused by the pre-existing physical impairment. Applying this construction to the first accident of October 9, 1970, we are unable to say the claimant's pre-existing back condition had anything to do with causing the railroad engine to hit the boxcar and the conveyor to strike the claimant in the low back area.

We must limit the application of the Second Injury statutes to the first accident. In referring to claimant's overall disability Dr. Alcox could not state the extent of the aggravation of the condition on which the claimant based his handicap. It follows that, to some extent at least, the first accident resulted in a new injury. It would be manifestly unfair to the fund to permit the new injury to be pyramided by reinjury or successive accidents. The new injury may be one not specified in the notice of the employment of a handicapped employee. It was incumbent on respondent to establish the liability of the Second Injury Fund. Respondent has failed to provide any evidence on which we can base a finding that the whole of the loss should be assigned to the fund.

Respondent next argues the district court erred in not passing on the liability of the Second Injury Fund. It points out that the Second Injury Fund has been a party to this case from the beginning; the fund was impleaded by respondent before the first hearing and appeared by counsel of record at that and all subsequent hearings and depositions, including the formulation of the stipulations and issues in the case. Respondent concludes the district court erred in not passing on the issue since the law requires the court to make a finding or order on every question of law involved.

The Second Injury Fund, by counsel, states there is nothing under the statutes which imposes a negative obligation on the director or on the district court in an appeal involving the Second Injury Fund, to enter an order establishing who is not liable to claimant. It further states the obligation of the district court under the statutes, and specifically K. S. A. 44-567, is to enter an order establishing who is responsible and liable to a claimant.

We agree with respondent that the district court should have

specifically covered the issue of the liability of the Second Injury Fund. We have heretofore disposed of the issue of whether the fund is responsible for the whole of the benefits under the "but for" rule. There remains the issue of the fund's liability under the apportionate theory as provided in subsection (2) of 44-567 (a). We are satisfied the disability suffered by claimant was at least partially caused by the pre-existing impairment. In these circumstances the fund should be liable for the part attributable to the pre-existing impairment. Our difficulty arises when we seek to determine what part. The statute requires that the determination be based upon "medical evidence." We have carefully searched the record for medical testimony which would provide some basis for such a determination. Not only was our search futile, but the medical testimony denies there is any reasonable basis for an apportionment. Dr. Alcox testified that the aggravation of the pre-existing impairment may be little or may be considerable.

The burden of proof is on respondent to establish to what extent the pre-existing impairment contributed to claimant's resulting disability. Respondent has failed to sustain this burden. We cannot speculate on what a proper apportionment should be; neither can we expect the district court to do so under these circumstances. Error cannot be predicated on the failure of the district court to make a finding on an issue which if properly determined would result in the judgment entered by the district court.

Affirmed.