No. 47,834

DAY & ZIMMERMAN, INC., and LIBERTY MUTUAL INSURANCE COMPANY, *Appellants,* v. NORMAN DEAN GEORGE and THE SECOND INJURY FUND OF STATE OF KANSAS, *Appellees.*

(542 P. 2d 313)

Opinion filed November 8, 1975.

*Garry W. Lassman,* of Keller, Wilbert, Palmer and Lassman, of Pittsburg, argued the cause and was on the brief for the appellants.

W. J. *Fitzpatrick,* of Independence, argued the cause and was on the brief for the appellee, Second Injury Fund.

*Simeon Webb,* of Pittsburg, argued the cause and was on the brief for the appellee, Norman Dean George.

The opinion of the court was delivered by

KAUL, J.: This is an appeal by an employer and its insurance carrier from a workmen's compensation award. Two awards are involved. The first award was entered for an accident occurring on October 14, 1970, and the second for accidents allegedly occurring one year later, on October 22 and 26, 1971. The Second Injury Fund (now the Workmen's Compensation Fund, see K. S. A. 1974 Supp. 44-566a [Amended, Laws 1975, Ch. 260, Sec. 3]) was impleaded in connection with the October 1971 accidents.

The disputed issues on appeal are between appellants and the Second Injury Fund and pertain to a modification of the first award by the trial court, reimbursement of appellants by the Second Injury Fund, and the method and manner of determining the amount of compensation and the apportionment thereof. The appellants have abandoned their points challenging the finding of total disability; hence, there is no dispute that claimant has been totally disabled since October 26, 1971.

Claimant was twenty-seven years of age at the time of his first accident on October 14, 1970. He was classified as an "Inert Handler" in the employer's ammunition plant. He worked as a laborer loading and unloading boxes, cartons and crates of various sizes and weights. Claimant testified that he had had no physical problems prior to the first accident. On October 14, 1970, claimant was attempting to move a railroad car with a hand jack. The jack slipped causing claimant to slip forward injuring the lower part of his back.

For several months claimant was seen and treated by the plant physician and several osteopaths and chiropractors near his home.

In March of 1971, claimant was referred to Dr. Harold L. Battenfield, an osteopathic physician specializing in orthopedic surgery, at Tulsa, Oklahoma. On March 31, 1971, Dr. Battenfield performed a laminectomy involving the removal of a portion of a herniated disc at L-4 and L-5.

Claimant returned to work on August 30, 1971, at what he described as light duty that did not entail lifting. Claimant's plant supervisor testified that claimant's job was rebanding ammunition, a light work which required lifting nothing over fifteen pounds.

There is evidence that he was assigned heavier work in the latter part of October. Claimant continued to work through October and testified that he was doing fairly well until October 22 when, following the operation of a banding machine, his back became worse. A few days later, on October 26, 1971, while lifting some bundles of fiber, weighing about 40 pounds, his back became even worse. Claimant testified that following the operation of the banding machine and the lifting of the 40-pound bundles, his back became so bad that he had to take off from work.

Claimant returned to Dr. Battenfield, who placed him in the hospital, ran a myelogram and performed another laminectomy together with a fusion to stabilize the spine.

In the meantime, hearings on the claim for the October 1970 accident were had before the examiner on September 13, 1971, and October 7, 1971. All depositions relating to the claim of October 1970 were completed by October 15, 1971. On January 24, 1972, the examiner entered his award. Some calculation errors were corrected by an order *nunc pro tunc* entered on February 2, 1972.

The examiner found that claimant was temporarily totally disabled from March 22, 1971, to August 30, 1971, a period of 22.86 weeks at $56.00 per week, totaling $1,280.16. The examiner also found that claimant had a 20% permanent partial general bodily disability and was entitled to 392.14 weeks at $13.49 per week, totaling $5,289.97.

Going back to 1971, after claimant had returned to work in August following his first injury, appellants filed with the director Form 88, "Notice of Employment of Handicapped Worker," listing claimant as having a "physical defect—spinal."

After claimant left work he filed, on November 21, 1972, an application for review under K. S. A. 44-528 [now 1974 Supp.] claiming increased disability.

On January 15, 1973, appellants filed an application for hearing requesting a determination of claimant's disability as a result of the October 22 and 26, 1971, accidents which were claimed to have caused the increased disability. Along with this application, appellants filed a motion to implead the Second Injury Fund. These three matters (claimant's application for review claiming increased disability, the application for hearing claiming injuries on October 22 and 26, 1971, and the motion to implead the Second Injury Fund) were consolidated for trial.

Hearings were had before the examiner during the first five months of 1973 and the medical depositions of Dr. Battenfield and Ivan W. Cain, M. D. were taken. On August 28, 1973, the examiner entered his award finding that claimant was a handicapped employee; that he had sustained additional accidents on October 22, 1971, and October 26, 1971; that the injuries would not have occurred *but for* claimant's preexisting defect; that as a result of the subsequent accidental injuries the claimant was temporarily totally disabled; that his condition would continue for an indefinite period; and that claimant was entitled to compensation at the rate of $56.00 per week from October 27, 1971, for not to exceed 415 weeks. The examiner further found that the first award (identified as Docket No. 64,735) entered for the October 14, 1970, injury was not affected and should not be modified. The examiner also found that K. S. A. 44-510a [now 1974 Supp.], was not applicable so as to reduce the compensation payable under this second award.

On application of the Second Injury Fund the examiner's award was reviewed by the director, who made some corrections of calculation errors, but, otherwise, approved the award on October 31, 1973.

The Second Injury Fund appealed to the district court which entered its decision on February 20, 1974. The court agreed with the director and examiner that additional accidental injuries were sustained on October 22 and 26, 1971, and that they would not have occurred, *but for* the preexisting defect resulting from the accidental injury of October 14, 1970, and resulting surgery. The court also agreed that claimant was temporarily totally disabled from October 27, 1971, and that K. S. A. 44-510a [now 1974 Supp.], was not applicable to reduce the compensation payable.

The court, however, disagreed with the examiner and director with respect to the modification of the first award and reimbursement of appellants for amounts paid in excess over their liability. It is these two facets of the court's judgment that are attacked by appellants on appeal.

Although it did not appeal or cross-appeal, the Second Injury Fund devotes its brief to the argument that there is no substantial competent evidence to support the findings that claimant sustained personal injury by accidents on October 22 and 26, 1971; and that such accidents would not have occurred but for claimant's preexisting defect. Second Injury asserts that this appeal demonstrates a situation where an employer, faced with the possibility of a

K. S. A. 44-528 [now 1974 Supp.] review, seizes the opportunity of availing itself of the provisions of the Second Injury Fund Act to escape the payment of additional compensation due to the workman by reason of his first and only accident.

Since the appellants, in support of their contention that the first award should not have been modified, interlace an argument that there is evidence to support the findings relating to the alleged accidents of October 22 and 26, we have considered Second Injury's brief in this regard. Concerning increased disability and modification of the first award the district court found:

". . . That the general disability of the workman had increased prior to October 27, 1971, from a 20% partial disability to a 50% partial general disability and the award of January 24, 1972, in Docket No. 64,735, should be modified in that subsequent to that date the Defendant and its Insurance Carrier should pay the Plaintiff the sum of $28.00 per week for 361 weeks; that the Plaintiff suffered accidental injuries on October 22, 1971, and on October 26, 1971, which caused the Plaintiff, together with the disability theretofore suffered, to be totally disabled for an indefinite period of long duration. . . ."

In their first two points on appeal, appellants strenuously contend there is no substantial competent evidence to support the district court's finding that disability had increased prior to the accidents of October 1971; and, further, that there was no substantial competent evidence to support modification of the first award entered on January 24, 1972. We are inclined to agree with appellants in this regard.

The examiner, director and district court each found that claimant had sustained personal injury by accidents on October 22 and 26, 1971. Despite the fact that claimant returned to work on August 30, 1971, and testified that he was doing "fairly well" until the accidents of October 22 and 26, 1971, the district court found that his disability had increased from 20% to 50% "prior to October 27, 1971." The court made no finding as to precisely when claimant's disability actually increased, it merely proceeded to modify the original award effective as of October 27, 1971, the day after the second accident occurred. It is undisputed that claimant's disability became a temporary total disability following the alleged second accidents of October 22 and 26. However, there is no evidence of a worsening condition prior to those dates. Claimant testified that he was doing fairly well and handling his work prior to October 22, and there is no evidence to the contrary. Along with their contentions that there. was no evidence to support a

finding of deterioration in claimant's condition, prior to October 22, 1971, appellants argue that there is evidence to support the court's findings that claimant sustained personal injury by accident on October 22 and 26, 1971; and that increased disability stemmed from those accidents, rather than from the first injury.

Thus, the controlling question is whether there is any substantial competent evidence to support the findings of new accidents, if so, then in the absence of evidence of deterioration prior to those dates, the original award should not have been modified, and disability at the rate of 20% should have been continued until the time of the second accidents when it increased to 100%. A careful reading of the record discloses evidence to support a finding that there was no new accident, but that claimant's worsened condition was merely a continuation of the October 1970 injury and resulting surgery. On the other hand, there is evidence to support the finding of new accidents. Since the latter was the finding made it cannot be disturbed by this court under the familiar rule that where there is substantial competent evidence to support the trial court's finding on a particular question this court will not disturb that finding. (*Rund v. Cessna Aircraft Co.,* 213 Kan. 812, 518 P. 2d 518; *Knoble v. National Carriers, Inc.,* 212 Kan. 331, 510 P. 2d 1274; and *Stanley v. A & A Iron Works,* 211 Kan. 510, 506 P. 2d 1120.) Moreover, the record must be viewed in the light most favorable to the party prevailing below. (*Buck v. Beech Aircraft Corporation,* 215 Kan. 157, 523 P. 2d 697.)

Turning back to the issue whether claimant sustained personal injury by accident on October 22 and 26, 1971, which would have not occurred *but for* claimant's preexisting physical condition under K. S. A. 44-567 (*a*) [now 1974 Supp.], the burden was upon appellants to prove a causal relation between the handicap and the subsequent injury. It must be shown that the subsequent accident must have been the proximate cause of the injury and that the accident would not have occurred "but for" the preexisting impairment. If it appears that the accident would not have happened without the handicap the test is met. (*Scott v. Day and Zimmerman, Inc.,* 215 Kan. 782, 529 P. 2d 679; and *Leiker v. Manor House, Inc.,* 203 Kan. 906, 457 P. 2d 107.)

On the point at issue, the claimant's testimony is inconsistent. At one point he denied having another accident. He was not, however, interrogated as to his understanding of the meaning of the term. It is doubtful whether he understood that the term "accident"

could encompass a situation where the worker's "physical structure gives way under the stress of his usual labor," a circumstance held to constitute a compensable accident in *Carney v. Hellar*, 155 Kan. 674, 127 P. 2d 496. The terms "personal injury" and "accident" as used in the Workmen's Compensation Act have been defined in language similar to that used in *Carney* in a long line of cases. (*Boeckmann v. Goodyear Tire & Rubber Co.*, 210 Kan. 733, 504 P. 2d 625; and *Pinkston v. Rice Motor Co.*, 180 Kan. 295, 303 P. 2d 197.)

Claimant also admitted that after his back deteriorated after October 27, he was told by an adjuster for his employer's insurer that he would have to call it a second injury if he wanted to draw more money.

On the other hand, claimant during the course of his testimony, on several occasions referred to "my first accident" and my "second injury" and also testified that after returning to work on August 30, 1971, "I continued doing that (the lighter job) until about a week or two before *I hurt myself.*"

Concerning his statement to the adjuster, claimant's verbatim testimony is as follows:

"The adjuster took a recorded statement from me on December 16, 1971.

"Q. And did you tell him the truth in those questions?

"A. As far as I know, yes.

"Q. And at that time, he asked you whether or not you had sustained a new injury on October 22, and you answered that you had, did you not?

"A. I did it, or I wouldn't draw no money.

"Q. But you told him the truth, didn't you?

"A. Yes.

"Q. And you also told him that you had injured yourself operating this crimping machine and the banding machine at that time, didn't you?

"A. Yes.

"Q. And you also told him that you had reinjured yourself four days later on the 26th while lifting the 42 pound weights, did you not?

"A. Yes."

Although his testimony is not clear nor altogether consistent, claimant did state that he injured himself on the two dates in question.

Likewise, the medical testimony is in conflict. Dr. Ivan W. Cain, whose testimony was rejected by the director for procedural reasons and readmitted by the trial court, testified that claimant was "physically incapacitated from doing manual type labor which he was doing prior to the accident. . . . I think his difficulties

can all be tied in with the accident which he described to his back on October 14, 1970."

Dr. Battenfield, on the other hand, testified that because of the first surgery, claimant's back was weak and susceptible to a second ruptured disc through the original surgical site and that in his opinion the subsequent rupture of the disc was due to the lifting. It is evident from their interpretations of Dr. Battenfield's testimony that both the examiner and the director found that claimant's subsequent ruptured disc resulted from the effect of lifting upon his back which had become weakened and susceptible to injury as a result of the first injury and subsequent surgery.

While testimony such as that disclosed in this record can reasonably be the subject of opposite interpretations and even support opposing conclusions, the test is whether the record contains any substantial competent evidence which on any theory of credence justifies the trial court's findings. It is not the function of this court to judge the credibility of witnesses or to determine what weight should be given their testimony. (*Stanley v. A & A Iron Works*, supra.)

Viewing the record in the light which we are required to do, we are compelled to say that there is substantial competent evidence to the effect that claimant's second ruptured disc was caused by "lifting" on his job and that it amounted to personal injury by accident which "but for" the preexisting condition of claimant's back would not have occurred.

In view of what has been said the posture of the case is that the first award for the sum of $13.49 per week based upon 20% permanent partial disability should not have been modified and the award of the director and examiner in this respect should be reinstated insofar as it affects the liability of appellants. In this connection appellants state in their brief:

"If, however, the original award is not to be affected, then that simply means that the appellant should pay the $13.49 awarded against it under the original award but should not in any way be affected by the second award against the second injury fund. . . ."

In other words, the liability of appellants in this regard is $13.49 per week based upon 20% permanent partial general bodily disability for the compensable period under the award of January 24, 1972, and appellants are entitled to reimbursement from the Second Injury Fund for any excess paid by appellants in this regard.

The judgment of the trial court awarding compensation of $56.00 per week based upon temporary total disability for an indefinite period not to exceed the maximum compensable period is not challenged and is therefore affirmed.

Since the appellants concede liability of $13.49 per week for 20% permanent disability under the first award, the liability of the Second Injury Fund is $42.51 per week during the remaining compensable period of the first award; thereafter, the liability of the Second Injury Fund is $56.00 per week, based upon temporary total disability for an indefinite period not to exceed the maximum compensable period.

The cause is remanded for further proceedings in harmony with this opinion.

MILLER, J., not participating.