No. 48,704

Gerhard Barke, *Claimant,* v. Archer Daniels Midland Company and/or Gooch Feed Mill Company, *et al., Respondent,* and Fidelity & Guaranty Casualty Insurance Company, Insurance Carrier, *Appellee,* and Kansas Workmen's Compensation Fund, *Appellant.*

(573 P 2d 1025)

Opinion filed January 21, 1978.

*C. Stanley Nelson,* of Hampton, Royce, Engleman, and Nelson, of Salina, argued the cause, and was on the brief for the appellant.

*David S. Knudson,* of King, Stokes, Knudson, and Nitz, Chartered, of Salina, argued the cause, and was on the brief for the appellee and respondent.

The opinion of the court was delivered by

Prager, J.: This is a workmen's compensation appeal. The award of compensation to the claimant, Gerhard Barke, based upon a temporary total disability is not disputed here. The contest is between the respondent-employer, Archer Daniels Midland Company, and the Kansas Workmen's Compensation Fund as to who should pay the award. The facts in the case are as follows: In April of 1963 the claimant Barke suffered a back injury while working for the International Milling Company of Salina. As a result of this injury, Drs. Coffey and Lungstrum in 1965 performed a two-level fusion in Barke's low back. In September 1967 the claimant suffered another back injury while working for the same company. Both of these injuries were found compensable by the workmen's compensation director, and the latter award was based upon a finding of 50% general bodily disability. The

then existing second injury fund was ordered to pay 75% of the award and the employer 25% of the award. Subsequent to claimant's 1967 accident, his kidneys started bleeding and he was advised that the bleeding was a result of the aspirin he was taking in addition to prescribed pain medication. The bleeding stopped after Barke was treated by a urologist.

In October of 1968, claimant Barke started to work for the respondent Archer Daniels Midland Company. Prior to December 9, 1974, the claimant was able to perform his assigned job tasks. His employer was aware that he had had a fusion for his low back problems and that he wore a low back brace. Claimant had worn the back brace continuously since 1965. Claimant's basic job for Archer Daniels was to load 50-pound sacks of feed onto boxcars and trucks. The feed was moved by conveyer belts and workers were required to do very little lifting as the conveyer belt was shoulder high and the worker simply laid the sacks on his shoulder and then placed them in a boxcar or truck.

On December 9, 1974, the claimant suffered the injury which is the subject matter of this proceeding. The claimant was about to move a 55-gallon barrel of feed onto a two-wheeler when he stepped on a three-quarter inch feed pellet, causing him to slip. He heard a pop and felt a sharp pain in his back in the same area where he had had back surgery in 1965. Claimant continued to work until quitting time and that evening suffered severe back pain. The next day he went to Dr. Jack Lungstrum, the orthopedic surgeon who had treated him for prior back injuries. Dr. Lungstrum prescribed conservative treatment and released claimant to return to work on January 2, 1975. In February of 1975 Barke's kidneys began bleeding again. He consulted Dr. James Roderick, a urologist, who gave him a prescription and the bleeding stopped in a few days. On March 17, 1975, the claimant's kidneys began bleeding again. The claimant was hospitalized. At that time Dr. Rex Romeiser advised claimant that the bleeding was caused by taking too much of the pain medication prescribed by Dr. Lungstrum. The urologist prescribed a different medication which did not contain aspirin. Since that time claimant has not returned to work. He has been under the care of both Dr. Lungstrum and Dr. Romeiser.

The medical testimony in the case was not disputed. Dr. Lungstrum testified that when he saw claimant on December 10,

1974, he had not treated the claimant since November 1970, and that the claimant had been working regularly. Dr. Lungstrum stated that after he saw claimant on December 20, 1974, he felt that the back strain sustained on December 9, 1974, was a relatively minor thing and that he expected claimant to be able to return to work the early part of January 1975. Dr. Lungstrum testified unequivocally that in his opinion the injury sustained by Barke on December 9, 1974, most likely would not have occurred but for the preexisting condition in his back. On cross-examination the doctor was asked if a person with a normal back could have injured his back and suffered back strain doing the same thing that Mr. Barke was doing at the time he was injured. In this regard Dr. Lungstrum stated that a person who had a perfectly intact back could go through the same maneuver that Mr. Barke went through and slip and get an injury, but that Mr. Barke, with his history of back difficulty, would be far more likely to get a back strain in that situation than somebody who had not had a previous back injury.

The only other medical testimony presented in the case was that of Dr. S. C. McCrae, an orthopedic surgeon, and Dr. Rex Romeiser, the urologist who treated the claimant for his kidney condition. Neither Dr. McCrae nor Dr. Romeiser expressed an opinion as to whether the injury suffered by claimant on December 9, 1974, most likely would not have occurred but for the preexisting condition in claimant's back. Dr. McCrae had seen the claimant as early as 1961 for severe pain in his low back. At that time Dr. McCrae had submitted a diagnosis of degenerative disc disease with lumbosacral strain, aggravated by lordosis and heavy work.

At the time of the hearing the claimant was involved in vocational rehabilitation and the examiner, therefore, found him temporarily totally disabled. The examiner also found that the claimant's injury would not have occurred but for his preexisting disability and directed that the award be paid in its entirety by the workmen's compensation fund. The director modified the examiner's findings and apportioned 75% of the award against the fund and 25% against the respondent and its insurance carrier. The district court adopted all of the findings of the director and this appeal followed.

On appeal the Kansas Workmen's Compensation Fund con-

tends that the district court's apportionment of the award, 75% against the fund and 25% against the respondent-employer, is not supported by substantial competent evidence. The respondent-employer, Archer Daniels Midland Company filed a cross-appeal. It maintains that the district court erred in failing to find that the claimant's injury sustained on December 9, 1974, most likely would not have occurred but for the preexisting condition in his back.

We have concluded that this case should be determined on the cross-appeal and that, on the undisputed medical evidence, the district court erred in failing to find that the injury sustained by claimant on December 9, 1974, most likely would not have occurred but for claimant's preexisting back condition. On that finding, the Kansas Workmen's Compensation Fund should be held fully liable for the award pursuant to K.S.A. 1974 Supp. 44-567(a)(1). It appears to us from the record that the examiner, the director, and the district court determined the case on the basis of K.S.A. 44-567 (Weeks 1973) and the cases construing it, failing to consider the substantial changes made in the workmen's compensation act in the 1974 legislative session.

Prior to 1974, K.S.A. 44-567(a)(1) provided as follows:

"44-567. . . . (a) An employer operating within the provisions of this act who employs a handicapped employee, as defined in K.S.A. 44-566, and who, prior to the occurrence of a compensable injury to a handicapped employee, files a notice thereof, together with a description of the handicap claimed with the workmen's compensation director shall be relieved of liability for compensation awarded or be entitled to an apportionment of the costs thereof as follows:

"(1) Whenever a handicapped employee is injured or is disabled or dies as a result of a compensable injury and the workmen's compensation director awards compensation therefor and when it appears to the satisfaction of the workmen's compensation director that *the injury or the death resulting therefrom would not have occurred* but for the preexisting physical or mental impairment of the handicapped employee all compensation and benefits payable because of the disability or death shall be paid from the second injury fund." (Emphasis supplied.)

In *Lieker v. Manor House, Inc.,* 203 Kan. 906, 457 P.2d 107, this court held that the word "injury" as used in 44-567(a)(1) meant "accident" and that under 44-567(a)(1) it is only where the *accident* causing the injury would not have occurred "but for" the preexisting physical or mental impairment, that the compensation award must be paid from the second injury fund. The words "but for" were held to be used in a causation sense, and the accident

itself must be proximately caused by the prior physical or mental impairment for the statute to apply. This interpretation of 44-567(a)(1) was followed in *Scott v. Day and Zimmerman, Inc.,* 215 Kan. 782, 529 P.2d 679, and again in *Day and Zimmerman, Inc. v. George,* 218 Kan. 189, 542 P.2d 313. Each of those cases involved an injury from an accident which occurred prior to July 1, 1974, the effective date of the 1974 amendments.

The accident in this case occurred on December 9, 1974, after the 1974 act became effective. The rights and liabilities of the parties must, therefore, be determined under K.S.A. 1974 Supp. 44-567 and other provisions of the 1974 act. It is clear that the legislature, by the amendments made in 1974, intended to expand the area of liability of the second injury fund which was now designated as the workmen's compensation fund. (K.S.A. 1974 Supp. 44-566a.) In regard to the expanded liability of the fund we note two amendments which we consider to be quite significant. The legislature amended the definition section (K.S.A. 1974 Supp. 44-508) so as to specifically define the terms "accident" and "injury" in the following language:

"44-508. **Definitions.** As used in the workmen's compensation act:

. . . . . . . . . . . . . .

"(*d*) 'Accident' means an undesigned, sudden and unexpected event or events, usually of an afflictive or unfortunate nature and often, but not necessarily, accompanied by a manifestation of force. . . .

"(*e*) 'Personal injury' and 'injury' mean any lesion or change in the physical structure of the body, causing damage or harm thereto, so that it gives way under the stress of the workman's usual labor. . . ."

From these new definitions it is obvious that the word "injury" as used in K.S.A. 1974 Supp. 44-567(a)(1) should no longer be construed to mean "accident." Stated simply, the *accident* is the "event" which causes the injury. The *injury* is the "change in the physical structure of the body" which occurs as a result of an accident.

The 1974 legislature also amended K.S.A. 44-567(a)(1) to make it read as follows in K.S.A. 1974 Supp. 44-567(a)(1):

"44-567. . . . (*a*) An employer operating within the provisions of the workmen's compensation act who knowingly employs or knowingly retains in his employment a handicapped employee, shall be relieved of liability for compensation awarded or be entitled to an apportionment of the costs thereof as follows:

"(1) Whenever a handicapped employee is injured or is disabled or dies as a result of an injury and the director awards compensation therefor and finds that

*the injury, disability or the death resulting therefrom probably or most likely would not have occurred* but for the preexisting physical or mental impairment of the handicapped employee, all compensation and benefits payable because of the injury, disability or death shall be paid from the workmen's compensation fund." (Emphasis supplied.)

It should be noted that the former statute K.S.A. 44-567($a$)(1) was changed by adding the word "disability" and now permits the director to find that the injury or *disability* or death "probably or most likely would not have occurred" but for the preexisting physical or mental handicap of the employee. The word "disability" has a well established meaning under the workmen's compensation act. "Disability" is the inability of the workman to perform work he was able to perform prior to his injury. (*Daugherty v. National Gypsum Co.,* 182 Kan. 197, 318 P.2d 1012.)

It is clear to us that by these statutory amendments the legislature changed the test to be applied in determining whether the Kansas Workmen's Compensation Fund (formerly the second injury fund) should assume full liability for an award of compensation. The test is no longer whether the *accident* would not have happened without the handicap. The new statutory test is whether the change in the physical structure of the workman's body (the injury) or the resulting impairment of his ability to perform work (the disability) "probably or most likely would not have occurred" but for the preexisting physical or mental impairment of the handicapped employee.

As noted above the evidentiary record in this case must be considered in light of the new test provided by the amendments made in 1974. If that test is applied, the undisputed record requires the entire amount of compensation in the present case to be paid by the Workmen's Compensation Fund. The fact that a person with a sound back could have stepped on a feed pellet, twisted his back, and suffered a back strain is no longer controlling. Here the only medical testimony in the case on the subject was that of Dr. Lungstrum who stated his firm opinion that the injury sustained by Mr. Barke on December 9, 1974, most likely would not have occurred but for his preexisting back condition. We have concluded that the district court erred in failing to apply the "but for" rule set forth in K.S.A. 1974 Supp. 44-567 so as to require the Workmen's Compensation Fund to pay the full amount of the award.

The judgment of the district court is reversed and it is ordered that the compensation award be paid in its entirety by the Workmen's Compensation Fund.