No. 47,941

Ralph Vincent Blevins, *Appellee*, v. Buildex, Inc., *Appellee*, and Northwestern National Insurance Company, *Appellee*, and Second Injury Fund, *Appellant*.

(548 P. 2d 765)

Opinion filed April 10, 1976.

*Gary L. Jordan*, of Ottawa, argued the cause, and was on the brief for the appellant.

No appearance by appellees.

The opinion of the court was delivered by

Schroeder, J,: This is an appeal by the Second Injury Fund (now Workmen's Compensation Fund, see K. S. A. 1975 Supp. 44-566a) in a workmen's compensation case challenging an apportionment of the award attributing five percent of the claimant's temporary total disability to the Second Injury Fund pursuant to K. S. A. 44-567 (*a*) (2).

The Second Injury Fund appeals contending the record discloses no medical evidence to sustain the trial court's finding that claimant's preexisting impairment contributed to his disability resulting from a second injury.

In August of 1962 the claimant, Ralph Blevins, suffered a back injury while working for the Colt Oil Company in Colony, Kansas. The claimant received a seven and one-half percent permanent partial disability settlement.

On September 28, 1970, the claimant began working for Buildex, Inc., respondent. A pre-employment physical examination initially classified the claimant as grade one or normal and passed him for employment. However, after the doctor saw the X-ray reports on the claimant's back showing some abnormal thinning of the lumbosacral disc, he gave the claimant a grade three rating. The respondent filed a Form 88, Notice of Handicapped Employees, showing the claimant's back condition as being an impairment. (See K. S. A. 44-567 and Rule No. 51-1-22.)

Buildex, Inc., manufactures haydite, burnt shale. The claimant worked as a "burner" for Buildex. Part of a burner's job consisted of hauling and using air hammers weighing 300-500 pounds. At times the claimant acted as an "oiler" which involved climbing ladders above shale pits.

On December 18, 1971, the claimant was injured during the course of his employment when he fell from a ladder eight or ten feet onto some shale, landing on his right side and hip. The claimant worked another one and a half hours to finish his shift and then saw Dr. Leitch in Garnett, Kansas. On December 20, 1971, the claimant worked his shift, but was in such severe pain that following his shift he went to Anderson County Hospital where he was X-rayed, given pain medication, and his pelvis placed in traction. On January 6, 1972, the claimant was transferred to the Kansas University Medical Center in Kansas City. After treatment and therapy, the plaintiff was released for light duty work in March of 1972, but no such work was available at Buildex.

The claimant was examined by numerous doctors and orthopedic surgeons. Generally they agreed the claimant would be unable to work at Buildex. Estimates of the permanent partial disability to the body as a whole attributable to the December 18, 1971, injury ranged from five percent by the respondent's doctors to thirty-five percent by the claimant's doctors.

On July 2, 1974, the workmen's compensation examiner found the claimant was temporarily totally disabled and ordered Buildex and its insurance carrier, Northwestern National Insurance Company, to pay medical expenses, fees and 133 weeks of temporary total disability at $56 per week to which the claimant was presently entitled, followed by 282 weeks at the rate of $56 per week subject to review and modification. The examiner also found the claimant's 1962 back injury did not contribute to the present claim, and there should be no apportionment between the respondent (and its insurance carrier) and the Second Injury Fund.

On October 21, 1974, the workmen's compensation director approved the examiner's award in all respects. On November 4, 1974, Buildex, Inc., and the insurance carrier appealed to the district court which sustained and confirmed the director's award in all but one respect. The district court noted the depositions of the doctors indicated the claimant's history would result in "some instability," but there was no "medical evidence" that the disability resulting from the injury on December 18, 1971, was directly contributed to

by a reinjury of the residual of the 1962 injury. However, the district court specifically pointed to Dr. Overesch's testimony which rated the claimant's disability of the body as a whole attributable to the injury of December 18, 1971; and his August 22, 1972, medical report which states, "It is felt that this patient has an additional 5 percent not related to this injury but present in the form of the wear and tear changes of the disc thinning and hypertrophic osteoarthritic changes of the lumbar vertebrae." Based on the medical evidence, the district court concurred with the workmen's compensation director that the claimant was unable to perform work of the same type and character as he was able to perform before he was injured, concurred in the amount of the award, but found "The disability attributable to the pre-existing [injury] is determined to be 5% or 1/20th of the award is apportioned to the second injury fund."

Appeal to this court has been duly perfected by the Second Injury Fund.

The Second Injury Fund is designed to encourage the hiring of certain handicapped persons by relieving the employer in whole or in part from the payment of workmen's compensation benefits in limited situations. (*Stanley v. A & A Iron Works,* 211 Kan. 510, 512, 506 P. 2d 1120; and *Scott v. Day and Zimmerman, Inc.,* 215 Kan. 782, 786, 529 P. 2d 679.) The history of this fund is fully discussed in *Leiker v. Manor House, Inc.,* 203 Kan. 906, 457 P. 2d 107; and *Hardwick v. General Motors Corporation,* 206 Kan. 182, 476 P. 2d 244. (See generally, 2 Larson, Workmen's Compensation Laws, § 59.30, *et seq.*)

The Second Injury Fund provisions applicable to this suit are found at K. S. A. 44-567. In order for the Second Injury Fund to apply the employer must file with the director a notice of his employment of a handicapped employee, including a description of the claimed handicap. These requirements were met in this case. Subsection (1) of K. S. A. 44-567 (*a*) provides:

"Whenever a handicapped employee is injured or is disabled or dies as a result of a compensable injury and the workmen's compensation director awards compensation therefor and when it appears to the satisfaction of the workmen's compensation director that the injury or the death resulting therefrom would not have occurred but for the preexisting physical or mental impairment of the handicapped employee all compensation and benefits payable because of the disability or death shall be paid from the second injury fund."

Subsection (2) of K. S. A. 44-567 (*a*) provides:

"Subject to the provisions of this act, as amended, whenever a handicapped employee is injured or is disabled or dies as a result of a compensable injury and the workmen's compensation director finds that *the injury would have been sustained or suffered without regard to the employee's preexisting physical* or mental impairment *but the resulting disability or death was contributed to by the preexisting impairment,* the workmen's compensation director shall determine in a manner which is equitable and reasonable *and based upon medical evidence* the amount of disability and proportion of the cost of award which is attributable to the employee's preexisting physical or mental impairment and the amount so found shall be paid from the second injury fund." (Emphasis added.)

Here the claimant's injuries resulted from a fall which was not attributable to his preexisting physical impairment. This is not a "but for" case under subsection (1) of K. S. A. 44-567 (*a*). (See *Leiker v. Manor House, Inc.,* supra; and *Scott v. Day and Zimmerman, Inc.,* supra.) The issue is whether "medical evidence" established the extent, if any, to which claimant's preexisting impairment *contributed* to his disability resulting from the second injury under K. S. A. 44-567 (*a*) (2).

Where there is substantial competent evidence to support the trial court's finding on a particular question in a workmen's compensation case, this court will not disturb that finding. (*Day and Zimmerman, Inc. v. George,* 218 Kan. 189, 542 P. 2d 313; and *Stanley v. A & A Iron Works,* supra at 513.) Moreover, in examining the record on appeal to determine whether there is substantial competent evidence to support the findings made, the record must be viewed in the light most favorable to the party prevailing below. (*Day and Zimmerman, Inc. v. George,* supra at 194; and *Rund v. Cessna Aircraft Co.,* 213 Kan. 812, 518 P. 2d 518.) Here Dr. Overesch rated the claimant's disability attributable to the injury of December 18, 1971. His opinion was that the claimant's prior injury would predispose him "to signs and symptoms of instability" and would make him more susceptible to injury. As a result of his examination he reported, "It is felt that this patient has an additional 5 percent not related to this injury but present in the form of the wear and tear changes of the disc thinning and the hypertrophic osteoarthritic changes of the lumbar vertebrae." Dr. Overesch's deposition testimony indicated he could with reasonable medical certainty differentiate between the December 18, 1971, injury and the additional problems in the low back due to the prior preexisting change.

Dr. Rombold, a retired Wichita orthopedic surgeon, who treated the claimant following his 1962 injury, testified such an injury

would leave the back in an unstable condition and more easily injured than otherwise. Furthermore, the claimant's pre-employment X-rays showed an abnormal thinning of the lumbosacral disc. (See *Hardwick v. General Motors Corporation,* supra at 186.) All this evidence supports the district court's apportionment.

The appellant emphasizes it is essential that the apportionment of liability between the Second Injury Fund and the employer and insurance carrier be based upon medical evidence. (*Scott v. Day and Zimmerman, Inc.,* supra at Syl. ¶ 3.) The district court properly recognized this rule. After carefully reviewing the record presented on appeal this court finds sufficient medical evidence to support the district court's apportionment.

The appellant contends the district court made contradictory findings in light of its statement:

". . . The depositions of the doctors indicated that, while such a history would result in some instability, there is no 'medical evidence' that the disability resulting from the injury on December 18, 1971, was directly contributed to by a reinjury of the residual of the 1962 injury. . . ."

We think the above finding is ambiguous. In our opinion, when the district court spoke of the disability resulting from the second injury as not having been *"directly contributed to by a reinjury"* of the first injury in 1962, liability of the Second Injury Fund under K. S. A. 44-567 (a) (1) was being ruled out. In other words, the district court found "but for" causation between the two injuries was not established by medical evidence. Thus construed, the finding can be reconciled with the trial court's continued findings pertaining to the testimony of the doctors and its ultimate conclusion on apportionment under K. S. A. 44-567 (a) (2).

The judgment of the lower court is affirmed.