(608 P.2d 1025)
No. 50,883

ALFREDO ALEJANDRE RAZO, *Appellee,* v. ERMAN CORPORATION, INC., and CONTINENTAL NATIONAL AMERICAN INSURANCE GROUP, *Appellants,* and THE KANSAS WORKMEN'S COMPENSATION FUND, *Appellee.*

Petition for review granted June 26, 1980.

Opinion filed March 21, 1980.

*J. Nick Badgerow* and *Thomas M. Van Cleave, Jr.,* of McAnany, Van Cleave & Phillips, of Kansas City, for appellants.

*Thomas A. Hamill,* of Hamill, Lentz, Neill & Dwyer, of Shawnee Mission, for appellee Workmen's Compensation Fund.

Before SWINEHART, P.J., REES and SPENCER, JJ.

REES, J.: This is a worker's compensation proceeding in which there has been an award for nonscheduled injury. The claimant had a preexisting physical impairment as the result of a prior industrial injury in 1970. The present award is the result of a second accident arising out of and in the course of claimant's employment in 1975. The district court ordered the Workmen's Compensation Fund to pay 25% of the cost of the award and the employer to pay 75% of that cost. The determination that claimant's work disability following the second injury is 100% permanent partial general bodily disability is not challenged. The appeal concerns the district court apportionment of responsibility for payment of the award. K.S.A. 1975 Supp. 44-567(*a*)(2) requires that the apportionment be equitable and reasonable and based upon medical evidence.

The parties' contentions attacking and supporting the apportionment are wholly founded upon the opinions of three doctors. Whether the apportionment determination was based upon medical evidence is not in issue. The question for decision is whether under the medical evidence in this case the district court apportionment is equitable and reasonable.

Dr. Alexander Lichtor examined the claimant on two occasions after the second accident. He "felt that [claimant] had some

disability" attributable to the first injury. Although the doctor's testimony may be read to include statements that claimant's second injury disability is overwhelmingly or primarily attributable to the second accident, the doctor directly testified he could not express with medical certainty an opinion as to the extent of the second injury disability attributable to the first injury.

Dr. Edward Prostic examined the claimant on two occasions after the second accident and after Dr. Lichtor's examinations. Dr. Prostic's rating of claimant's second injury disability was 60% permanent partial general bodily disability. He described this 60% rating as a "combined" rating having as its two constituent elements a 40% permanent partial disability of the left knee attributable to the first injury and a 25% permanent partial general bodily disability. With respect to the 25% permanent partial general bodily disability element, it was his opinion that no more than 20% of it was attributable to the first accident and at least 80% was attributable to the second accident. The doctor's testimony also included his statement that "I would say that the preponderant damage was done through the [second] accident, on at least a functional basis."

The third physician, Dr. Harry Overesch, examined claimant after the first accident and again after the second accident. He concluded claimant's second injury disability was a 5% to 10% permanent partial general bodily disability and as a part of this there was a 2-½% permanent partial general bodily disability attributable to the second accident. It is made clear in Dr. Overesch's testimony that his references to 2-½% disability and 5% to 10% disability were work disability evaluations.

With the exception of the above noted comment of Dr. Prostic and three clarifying questions and responses in Dr. Overesch's testimony, no references were made by the doctors or the three participating counsel to functional disability. Under the Act, general bodily disability is nonscheduled injury and is work disability, while disability of the knee is scheduled injury and is functional disability. *Gross v. Herb Lungren Chevrolet, Inc.*, 220 Kan. 585, 552 P.2d 1360 (1976); K.S.A. 1975 Supp. 44-510d (15), (16), (18), (21); K.S.A. 1975 Supp. 44-510e(*a*). To say that any of the physicians or counsel spoke other than in the context of our Workers' Compensation Act definitions of disability would be unrealistic; it is obvious they were all experienced practitioners in this field.

We recently dealt with apportionment under K.S.A. 1975 Supp. 44-567(*a*)(2) in *Desbien v. Key Milling Co.,* 3 Kan. App. 2d 43, 588 P.2d 482 (1979). We need not repeat what is said there.

In the teeth of Dr. Lichtor's acknowledgment of his inability to express an apportionment opinion with medical certainty, his nonspecific references to overwhelming or primary attribution of claimant's second injury disability to the second accident cannot be medical evidence of the quality required by K.S.A. 1975 Supp. 44-567(*a*)(2). *Cf. Rowe v. Maule Drug Co.,* 196 Kan. 489, 413 P.2d 104 (1966) (doctor's "honest expression of professional opinion" of causal connection between accident and physical complaints as well as consistent lay testimony held sufficient evidence of causation in auto accident case).

Dr. Overesch's testimony afforded ground for apportionment to the second accident of 25% to 50% of the cost of the award (2-½% is 25% of 10%; 2-½% is 50% of 5%). Conversely, Dr. Overesch's testimony afforded ground for apportionment to the first accident of 50% to 75% of the cost of the award.

Dr. Prostic concededly testified "preponderant damage" was attributable to the second accident, but we find this conclusion too tenuous for material reliance in view of his specific apportionment testimony. This latter testimony requires analytical consideration in somewhat reverse order. He found claimant's second injury disability to be 60% permanent partial general bodily disability, work disability. As noted above, he concluded this 60% work disability included two elements, (1) a work disability element of 25% and (2) the first injury element, 40% permanent partial disability of the knee. Inasmuch as permanent partial disability of the knee is functional disability, it is not illogical to find the sum of the 25% work disability rating and 40% functional disability rating to be a work disability rating of 60% rather than 65%. Under *Desbien,* the two component ratings, one functional disability and the other work disability, could not be compared if it were not for the "combined" or resultant 60% work disability rating. Dr. Prostic's testimony reflects no two stated or ascertainable functional disability factors, only work disability factors.

What is discerned when there is added to Dr. Prostic's testimony that no more than 20% of the 25% work disability element was attributable to the first accident and not less than 80% of the

25% work disability element was attributable to the second accident? First, the 20% and 80% are abstract percentages; neither both nor either relates to functional disability or work disability; they relate to an apportionment of the 25% work disability element.

Second, since Dr. Prostic's second injury rating was in the aggregate sum of 60% work disability and 25% work disability was one of its two elements, it follows that under his testimony the 40% disability of the knee, functional disability, must be equated to 35% work disability. The ratio of the constituent elements. of the 60% work disability is 25:35.

Third, disregarding the "no more but not less than" feature of Dr. Prostic's apportionment of the 25% work disability element for lack of certainty, we find his opinion to be that to the first injury element (35% work disability) of the second injury rating (60% work disability), there is to be added 20%, or one-fifth, of the 25% work disability element. Upon making this adjustment the resulting ratio becomes 20 to 40, or 1 to 2.

The result of analysis of Dr. Prostic's testimony is that upon his evaluation the apportionment between the second accident and the first accident is in a ratio of 1 to 2 and the cost of the award should be apportioned one-third to the second accident and two-thirds to the claimant's preexisting physical impairment.

Summarization of the three doctors' testimony discloses that upon it, 50% to 75% (Prostic - ⅔; Overesch - 50% to 75%) of the cost of the award is attributable to claimant's preexisting physical impairment, and 25% to 50% (Prostic - ⅓; Overesch - 25% to 50%) of the cost of the award is attributable to the second accident.

By reason of the requirement of K.S.A. 1975 Supp. 44-567($a$)(2) that apportionment be "based upon medical evidence," we hold the district court apportionment to be erroneous for the reason that it is not within the ranges established by the doctors' testimony.

Reversed and remanded for modification of determination of amount to be paid by the Fund and amount to be paid by the employer and its insurance carrier.