No. 50,883

ALFREDO ALEJANDRE RAZO, *Appellee*, v. ERMAN CORPORATION, INC. and CONTINENTAL NATIONAL AMERICAN INSURANCE GROUP, *Appellants*. and THE KANSAS WORKMEN'S COMPENSATION FUND, *Appellee*.

(618 P.2d 1161)

Opinion filed November 1, 1980.

*J. Nick Badgerow*, of McAnany, Van Cleave & Phillips, of Kansas City, argued the cause and *Thomas M. Van Cleave, Jr.* and *Margaret W. Fabian*, of the same firm, were with him on the brief for appellant.

*Thomas A. Hamill*, of Hamill, Lentz, Neill & Dwyer, of Shawnee Mission, argued the cause and was on the brief for appellee Workmen's Compensation Fund.

The opinion of the court was delivered by

HOLMES, J.: This is an appeal in a workmen's compensation case by the employer, Erman Corporation, Inc., and its insurance carrier, Continental National American Insurance Group (appellants), from a district court decision apportioning an award of 100% permanent partial disability, 75% to the appellant employer and 25% to the Kansas Workmen's Compensation Fund (the Fund). The Court of Appeals reversed the district court and ordered the case remanded for further proceedings. *Razo v. Erman Corp.*, 4 Kan. App. 2d 473, 608 P.2d 1025 (1980). We granted review on a petition filed by the Fund.

The award to the original claimant, Alfredo Alejandre Razo, is not disputed and the only issue on appeal is the allocation between the appellants and the Fund of the responsibility for payment of the award. In 1970, Mr. Razo, while employed at the Erman Corporation as a burner, sustained an injury to his left knee and back. He underwent surgery on the knee and returned to

his original job as a burner approximately three months thereafter. The duties of a burner require heavy manual labor, including the repetitious lifting of objects weighing from 100 to 150 pounds. Mr. Razo received temporary total disability payments while he was off work in 1970 but no permanent disability award. Mr. Razo continued his employment with Erman Corporation and on October 28, 1975, while lifting one of the heavy objects, suffered an injury to his back. In the fall of 1976 he was able to return to work at Erman Corporation as a security guard at a desk job requiring no manual exertion. There is some indication from the record that the position was created for Mr. Razo so he could resume some limited degree of gainful employment.

K.S.A. 1975 Supp. 44-567(*a*)(2) provided:

"(*a*) An employer operating within the provisions of the workmen's compensation act who knowingly employs or knowingly retains in his employment a handicapped employee, shall be relieved of liability for compensation awarded or be entitled to an apportionment of the costs thereof as follows:

. . . .

(2) Subject to the provisions of the workmen's compensation act, whenever a handicapped employee is injured or is disabled or dies as a result of an injury and the director finds that the injury probably or most likely would have been sustained or suffered without regard to the employee's preexisting physical or mental impairment but the resulting disability or death was contributed to by the preexisting impairment, the director shall determine in a manner which is equitable and reasonable and based upon medical evidence the amount of disability and proportion of the cost of award which is attributable to the employee's preexisting physical or mental impairment, and the amount so found shall be paid from the workmen's compensation fund."

The workmen's compensation examiner entered an award for Mr. Razo of permanent total disability and apportioned the responsibility for payment 75% to appellants and 25% to the Fund. The director modified the examiner's award to 100% permanent partial disability based upon K.S.A. 1975 Supp. 44-510c(*a*)(2), and affirmed the apportionment of the award as found by the examiner. Upon review, the district court affirmed and adopted the findings and orders of the director. Erman Corporation and its insurance carrier have appealed the apportionment determination. The Court of Appeals, after making its own interpretation of the medical testimony, found the apportionment which must be "based upon medical evidence," as required by the statute, "to be erroneous for the reason that it is not within the ranges established by the doctors' testimony." 4 Kan. App. 2d at 476. The

decision of the trial court was reversed and the case ordered remanded for further proceedings. Upon review we disagree with the Court of Appeals and affirm the trial court's decision.

The medical evidence disclosed by the record consisted of the depositions of Harry B. Overesch, M.D., Edward J. Prostic, M.D., and Alexander Lichtor, M.D. All were orthopedic surgeons. None was the treating physician and their contact with Mr. Razo was solely for the purpose of examination. Mr. Razo's treating physicians for both injuries were C. L. Francisco, M.D., orthopedic physician, and W. David Francisco, M.D., an orthopedic surgeon. Mr. Razo was also seen by Rae Jacobs, M.D., an orthopedic physician at the University of Kansas Medical Center, in consultation with the Francisco brothers following the second injury. There is nothing in the record to indicate why the testimony of these doctors was not sought.

This court and the Court of Appeals have dealt with the issue of whether the apportionment of a workmen's compensation award is supported by the evidence in several cases. In *Desbien v. Key Milling Co.,* 3 Kan. App. 2d 43, 44-45, 588 P.2d 482 (1979), the Court of Appeals set out the elements of the statute as follows:

"(1) [T]he apportionment determination is to be made in an equitable and reasonable manner; (2) the apportionment determination is to be based on medical evidence; (3) the determination to be made is the amount of resulting disability and proportion of the cost of the award attributable to the preexisting physical impairment."

It is the well-settled rule in this jurisdiction that when an appellate court examines a record on appeal to determine whether there is substantial competent evidence to support the district court's findings, the record must be reviewed in the light most favorable to the party prevailing below. *Blevins v. Buildex, Inc.,* 219 Kan. 485, 548 P.2d 765 (1976). In *Day and Zimmerman, Inc. v. George,* 218 Kan. 189, 542 P.2d 313 (1975), this court stated:

"While testimony such as that disclosed in this record can reasonably be the subject of opposite interpretations and even support opposing conclusions, the test is whether the record contains any substantial competent evidence which on any theory of credence justifies the trial court's findings. It is not the function of this court to judge the credibility of witnesses or to determine what weight should be given their testimony. (*Stanley v. A & A Iron Works,* supra, [211 Kan. 510, 506 P.2d 1120].)" p. 196.

As is disclosed by the opinion of the Court of Appeals, the medical testimony of the three doctors is subject to varying

interpretations. However, there are certain things that all three doctors did agree upon, including (1) Mr. Razo suffered some permanent disability from the 1970 injury; (2) Mr. Razo suffered a disabling injury in 1975 from the heavy lifting required by his job, and (3) the resulting disability following the 1975 injury was contributed to by the disability resulting from the 1970 injury.

Dr. Lichtor and Dr. Prostic both agreed that Razo was totally disabled from performing manual or physical labor of the type he had been doing prior to the 1975 injury. The Court of Appeals appears to discount the testimony of Dr. Lichtor because of his inability "to express an apportionment opinion with medical certainty." 4 Kan. App. 2d at 475. The testimony of Dr. Lichtor, which appears to be the basis of the Court of Appeals conclusion, came in answer to a question referring to pain which might be attributable to the first injury and was not a response to any question asking the doctor to apportion on a percentage basis the degree of the disability attributable to each injury. The specific question and answer read:

"Q. [by Ms. Fabian]. There is descriptions, both in the history and complaint, physical examination, as to pain in the knee, in the chest, left chest, neck, left upper extremity, all of which I presume relate to the old condition?

"A. [by Dr. Lichtor]. I wouldn't be able to say with certainty, having not seen him before. I don't think it [the pain in the knee, etc.] is, in this particular case, because *I think the second injury was really overwhelming to him.* I have no history of the first accident causing him pain in the chest or upper extremity. Therefore, I really couldn't say with certainty, reasonable medical certainty." (Emphasis added.)

While Dr. Lichtor was never asked, and did not attempt, to apportion the present disability between the two injuries on a percentage basis, he recognized the fact that Mr. Razo had worked nearly five years in his job as a burner between the time of the first and the second injury; that the second injury was the cause of his present inability to do manual labor and the doctor was of the opinion that the second injury was the overwhelming or primary cause of disability. We do not agree with the Court of Appeals determination that Dr. Lichtor's "nonspecific references to overwhelming or primary attribution of claimant's second injury disability to the second accident cannot be medical evidence of the quality required by K.S.A. 1975 Supp. 44-567(a)(2)." 4 Kan. App. 2d at 475. We know of no rule of law which holds that unless the degree of disability is expressed in a percentage fash-

ion, the doctor's findings and opinion do not qualify as medical evidence under the statute.

Dr. Prostic, while obviously confused when various counsel attempted to elicit specific percentages of disability attributable to each injury, was definitely of the opinion that the greater amount of the disability was due to the second injury. In his testimony, he stated:

"I think that a man who felt capable of lifting an object weighing over a hundred pounds, and apparently was able to do it on a repetitive basis, did not have a great amount of disability from his spine. And that now he is no longer able to do that and now he does have a great amount of disability from his spine. *So, I would say that the preponderant damage was done through the 1975 accident,* on at least a functional basis." (Emphasis added.)

Again, when asked his opinion of the cause of the disability of Mr. Razo, Dr. Prostic answered:

"My opinion is that the difficulty with the man's back and neck and left arm were from the accident that he described in 1975."

The director in commenting upon Dr. Prostic's testimony and the confusing percentages stated:

"The doctor's remarks with regard to apportionment of 80% to the 1975 injury and 20% to the pre-existing condition were directed at his comments regarding the 25% back disability, however, his later statement that the greatest amount of the damage was caused by the 1975 accident seems to bear out this relationship. The doctor felt that anyone who was able to work on a continuing basis lifting over 100 pounds apparently did not have a great amount of disability in the spine and therefore the 1975 injury must surely have contributed the greatest amount of the injury."

Both doctors agreed Mr. Razo was totally disabled from performing manual or physical labor and that the "overwhelming" or "preponderant" extent of the disability was caused by the second injury.

Dr. Overesch examined Mr. Razo on two occasions and was of the opinion he had 5 to 10 percent permanent partial disability of the body as a whole. He was further of the opinion that 2½ percent of the 5 to 10 percent disability was caused by the second injury and as much as 75% of the existing disability was caused by the first injury. As stated by the director in his order:

"Dr. Harry B. Overesch testified that he felt that the claimant had sustained a five to ten percent permanent disability which the Director finds hard to reconcile with his findings of emotional and physical problems. His apportionment of

disability was on the basis of one-fourth to the 1975 injury and 75% to the pre-existing condition."

We are therefore directly faced with the problem of whether an apportionment of disability in a workmen's compensation claim can be upheld when that apportionment is not based upon *specific* percentages of disability established by medical evidence. We think it can. While the statute requires the apportionment to be based upon "medical evidence" it does not preclude consideration of such evidence presented in a general or non-specific manner nor does it preclude other relevant evidence bearing upon the issue.

In the instant case Mr. Razo testified extensively about his condition and ability to do manual or physical labor following each injury. Following the first injury he was able to return to work within three months of his knee surgery; he returned to his old job as a burner; he was capable of performing his duties as a burner; he regularly lifted objects weighing between 100 and 150 pounds; he not only worked a regular 8-hour day but overtime whenever he could get it; he suffered a little pain once in a while but not like that following the second injury; he felt he handled his job "real good"; and following the second injury he was unable to do any manual labor. Such testimony from Mr. Razo, while not medical evidence, certainly supports the conclusions and opinions of Drs. Lichtor and Prostic and should not be ignored. Upon the general question of medical evidence in workmen's compensation cases, see 3 Larson, Workmen's Compensation Law § 79.50 *et seq.*

We will not attempt to analyze further, or speculate upon, the percentage figures testified to by Drs. Prostic and Overesch. Suffice it to say the minimal disability found by Dr. Overesch and the allocation thereof between the first and second injuries were expressed in definite percentages. On the other hand Dr. Prostic was definite in his conclusion and opinions as to the preponderant cause of damage, but his attempts to express his views on a percentage basis were subject to conflicting interpretations as evidenced by the orders of the examiner and director, the opinion of the Court of Appeals and the briefs and arguments of the parties. As stated by the director in his order:

"On the basis of the medical testimony herein, it appears to the Director that the apportionment of compensation by the examiner is appropriate and based on

medical evidence which tends to indicate that the greatest amount of the difficulty was caused by the 1975 injury."

Having determined that the testimony of the doctors adequately constitutes medical evidence justifying apportionment of the award, the only remaining question is whether such apportionment was done in an equitable and reasonable manner. It is obvious that the testimony of Dr. Overesch that 75% of Mr. Razo's disability was due to the first injury is diametrically opposed to that of Drs. Lichtor and Prostic, who were of the opinion that the overwhelming, primary and preponderant cause of the disability was the second injury. As pointed out in *Day and Zimmerman, Inc. v. George*, 218 Kan. 189, the testimony in the instant case could support opposite conclusions; however, "the test is whether the record contains any substantial competent evidence which on any theory of credence justifies the trial court's findings." p. 196.

Does the medical evidence support an apportionment of 25% to the first injury and 75% to the second injury? We think so. It is conceded by all three doctors that the first injury contributed to the disability. Therefore the evidence would not support an allocation of 100% to the second injury. It requires no dictionary definition of the meaning of such words as overwhelming, principal or predominant to demonstrate that in the context used by Drs. Lichtor and Prostic far more than 50% of the disability was attributable to the second injury. Thus, it would appear that considerably more than 50% and something less than 100% of Mr. Razo's disability was attributable to the second injury. While it certainly would have been preferable to have specific testimony on a percentage basis that was not subject to interpretation and conjecture, we cannot say, in view of the general findings and opinions of a majority of the doctors, that the allocation of 25% to the first injury and 75% to the second injury was not done in an equitable and reasonable manner.

The judgment of the Court of Appeals is reversed and the judgment of the district court is affirmed.