(592 P.2d 471)

No. 50,091

SANDRA JEAN HINTON, *Claimant-Appellant,* v. S. S. KRESGE COMPANY, *Respondent-Appellant,* and KANSAS WORKERS' COMPENSATION FUND, *Appellee.*

Opinion filed December 29, 1978.

*John W. Lungstrum* of Stevens, Brand, Lungstrum, Golden and Winter, of Lawrence, for the appellant Sandra Jean Hinton.

*Margaret Fabian* and *Thomas M. Van Cleave, Jr.,* of McAnany, Van Cleave & Phillips, P.A., of Kansas City, for the appellant S. S. Kresge Company.

*Eugene C. Riling* of Riling, Burkhead & Rhudy, Chartered, of Lawrence, for the appellee.

Before FOTH, C.J., REES and SWINEHART, JJ.

SWINEHART, J.: This is an appeal by S. S. Kresge Company, a self-insured employer, from a judgment entered by the district court absolving the Kansas Workers' Compensation Fund from liability for injuries suffered by Sandra Jean Hinton, claimant employee, during the course of her employment with S. S. Kresge Company.

The question presented by this appeal is whether the trial court erred in concluding that the employer did not have knowledge that claimant was a handicapped employee within the meaning of K.S.A. 44-567, though she had been retained in the employment of Kresge Company following a work-related accident and treatment. Based on this finding, the court ruled that the Kansas Workers' Compensation Fund was not liable for payment of compensation for an injury sustained on June 23, 1975.

For this accident, which occurred in 1975, K.S.A. 1974 Supp. 44-567 governs the liability of the Fund. The pertinent parts of that statute provide as follows:

"(a) An employer operating within the provisions of the workmen's compensation act who knowingly employs or knowingly retains in his employment a handicapped employee, shall be relieved of liability for compensation awarded or be entitled to an apportionment of the costs thereof as follows:

(1) Whenever a handicapped employee is injured or is disabled . . . as a result of an injury and the director . . . finds that the injury [or] disability . . . probably or most likely would not have occurred but for the preexisting physical or mental impairment . . . all compensation . . . shall be paid from the workmen's compensation fund.

(2) [W]henever . . . the injury probably or most likely would have been sustained or suffered without regard to the employee's preexisting physical or mental impairment but the resulting disability or death was contributed to by the preexisting impairment, the director shall determine . . . the amount of disability . . . which is attributable to the employee's preexisting . . . impairment, and the amount so found shall be paid from the workmen's compensation fund.

"(b) In order to be relieved of liability under this section, the employer must prove either that he had knowledge of the preexisting impairment at the time he employed the handicapped employee or that he retained such handicapped employee in his employment after acquiring such knowledge. The employer's knowledge of the preexisting impairment may be established by any evidence sufficient to maintain the employer's burden of proof with regard thereto."

K.S.A. 1974 Supp. 44-566(*b*) provided in part:

"A 'handicapped employee' means one afflicted with or subject to any physical or mental impairment, or both, whether congenital or due to an injury or disease of such character the impairment constitutes a handicap in obtaining employment or would constitute a handicap in obtaining reemployment if the employee should become unemployed and his handicap is due to any of the following diseases or conditions . . . .

"16. Any physical deformity or abnormality;

"17. Any other physical impairment, disorder or disease, physical or mental, which is established as constituting a handicap in obtaining or in retaining employment."

## The facts and findings of the trial court are as follows:

"1) The Claimant's condition of spondylolysis constituted a handicap and Claimant was a handicapped employee at the time of her June 23, 1975, injury. . . .

"2) The disability resulting from the June 23, 1975, accident would not have occurred but for Claimant's handicap and May 23, 1975, injury . . . . .

"3) The Respondent has failed in its burden to show knowledge of Claimant's preexisting impairment constituting a handicap . . . . .

"b) The release signed by Dr. Wertzberger authorizing Claimant to return to work June 23, 1975, stated that Claimant had a 'contusion of back.' There was no indication of disability, and no evidence that a disability existed. This release could not constitute notice to Respondent that Claimant had a preexisting condition that would make Claimant more susceptible to reinjury.

. . . .

"c) The evidence indicated that Dr. Wertzberger was an orthopedic consultant for Respondent: a physician to whom Respondent referred its injured employees with orthopedic problems. There is no evidence that Respondent exercised any control over Dr. Wertzberger or that he was acting in any supervisory or representative capacity for Respondent. The knowledge that Dr. Wertzberger had concerning Claimant's preexisting condition of spondylolysis is not imputed to Respondent to constitute the knowledge required by K.S.A. 44-567.

. . . .

"e) The knowledge of Respondent that Claimant had been injured May 23, 1975, and that her injury consisted of a contusion to her back, is not by itself sufficient to impart knowledge to Respondent that Claimant was a handicapped employee."

The claimant met with personal injury by accident on May 23, 1975. That accident arose out of and in the course of her employment. The examination of claimant, following the May 23rd injury to her back, by Dr. Wertzberger, Kresge Company's orthopedic consultant, indicated a condition existed called spondylolysis. This condition consists of a weakness or instability in the bony area between vertebrae and is either congenital or acquired. In claimant this condition existed in the lumbosacral area of her spine.

The injury claimant received on May 23, 1975, was not caused by the preexisting spondylolysis. However, the May 23rd injury, when superimposed on the spondylolysis, made claimant more susceptible to prolonged recovery from an injury and to a subsequent injury.

The claimant was released to return to work by Dr. Wertzberger on June 23, 1975, as asymptomatic, although she had not performed any lifting and was still on pain medication. Claimant was experiencing mild pain upon returning to work June 23rd, yet she performed her usual duties for a few hours. Upon attempting to lift a box, approximately forty pounds, she again experienced the severe pain in her lower back. Following this incident, she returned home and again went under a physician's care and treatment. On April 26, 1976, the claimant had surgery for a lumbar fusion.

Although Dr. Wertzberger discovered the spondylolysis prior to the second injury, he did not inform Kresge of that finding. Instead, his report stated merely that the claimant had been under his care for "contusion of back" and could return to work.

The examiner entered an award for temporary total disability, and relieved the Fund of any liability. The director found an 80% permanent partial disability rather than the temporary total. The director apportioned this award to be paid 75% by Kresge and 25% by the Fund. The district court affirmed the finding of 80% permanent partial disability, but relieved the Fund of any liability for the award.

It was the intention of the legislature, in creating the Workers' Compensation Fund, to encourage employers to hire and/or retain in their employ handicapped persons. This was to be accomplished by shifting the burden of compensation from the employer to the Fund for the payment of an award for injuries to handicapped employees. The Fund is financed by contributions from insurance carriers and by legislative appropriations.

The provisions here involved should be liberally construed in order to carry out the legislative intent and encourage employment of handicapped workers. *Leiker v. Manor House, Inc.*, 203 Kan. 906, 913, 457 P.2d 107 (1969); Woodin, *Workmen's Compensation—The Workmen's Compensation Fund*, 24 Kan. L. Rev. 641, 643 (1976).

Kresge argues that the trial court found *both* the spondylolysis and the May 23rd injury to be "handicaps" and that since it clearly had knowledge of the May 23rd injury, nothing further was needed to impose liability on the Fund. However, the trial court did *not* find that the May 23rd injury, in itself, constituted the claimant a handicapped employee. Kresge's argument is based upon the following finding by the court:

"2) The disability resulting from the June 23, 1975, accident would not have occurred but for Claimant's handicap and May 23, 1975, injury  . . . ."

Kresge reasons that the disability resulting from the June 23rd injury would not have occurred but for the claimant's handicap (the spondylolysis) *and* the May 23rd injury. However, Kresge fails to note the court's further finding as follows:

"3) The Respondent has failed in its burden to show knowledge of Claimant's preexisting impairment constituting a handicap.  . . .

"e) The knowledge of Respondent that Claimant had been injured May 23, 1975, and that her injury consisted of a contusion to her back, is not by itself sufficient to impart knowledge to Respondent that Claimant was a handicapped employee."

The import of this finding is that knowledge of the earlier injury was not equivalent to knowledge that the claimant was handicapped.

Under K.S.A. 1974 Supp. 44-567, the employer has the burden of proof that he "knowingly" retained a "handicapped employee." K.S.A. 1974 Supp. 44-566(*b*) defines "handicapped employee" as one afflicted with an impairment "of such character the impairment constitutes a handicap in obtaining employment." Whether a particular impairment such as the May 23rd injury is of such character is clearly a question of fact. Since the employer (Kresge) is the party claiming that the May 23rd injury, in itself, caused the claimant to be a handicapped employee, the burden is on it to prove such to be the case. The only evidence Kresge points to is the fact that claimant was injured, required medical treatment, and was off the job for four weeks. The court found that this was not enough to constitute claimant a handicapped employee. This, in effect, is a negative finding. The effect of a negative finding by a trial court is that the party upon whom the burden of proof is cast did not sustain the requisite burden. Absent arbitrary disregard of undisputed evidence, the finding of the trial judge cannot be disturbed. *Jennings v. Speaker, Executrix,* 1 Kan. App. 2d 610, 571 P.2d 358 (1977).

Kresge argues that it only needs to know the general nature of the employee's impairment, not the precise medical terminology and cites *Hardwick v. General Motors Corporation,* 206 Kan. 182, 476 P.2d 244 (1970). In that case, the employee had suffered a back injury in a non-work related accident. X-rays after this accident revealed that the employee had a congenital back defect, independent of any injury sustained in the accident. The employer then filed notice with the director that the employee was "handicapped." The employer claimed it did so on the basis of the congenital defect. The employee was injured at work and filed a claim. The examiner, director and trial court found that the Fund was not liable because the employee was recovered from the first injury, and it therefore did not contribute to the second. The Supreme Court reversed, saying that the medical evidence established that the congenital defect contributed to the second injury. The case is of no help to Kresge here. First, it has no relevance to whether Kresge has met its burden of proof that the May 23rd injury was enough to constitute claimant a handicapped employee. Second, if Kresge is arguing that its knowledge of the May 23rd injury is sufficient as knowledge that claimant had a "back injury" to also be knowledge of the spondylolysis, the case is of no support. The court in *Hardwick* apparently was persuaded that the employer's notice to the director that the employee there had a "physical deformity—low back disorder" was based on knowledge of the congenital defect, *not* simply the injury.

Kresge failed in its burden of proof that the May 23rd injury, independent of the spondylolysis, constituted claimant a "handicapped employee," thus the Fund cannot be liable on that basis.

The employer further contends that it had imputed knowledge of the claimant's spondylolysis by reason of Dr. Wertzberger's findings arising out of his examination, including X-rays and treatment for the May 23rd incident.

The trial court found that Dr. Wertzberger was an orthopedic consultant for Kresge and that Kresge referred its injured employees who had orthopedic problems to him (finding No. 3 [c] above). Kresge argues that a principal-agent relationship existed between itself and Dr. Wertzberger so that his knowledge of the spondylolysis prior to the second injury should be imputed to it.

Kansas recognizes the general rule that knowledge obtained by an agent within the scope of his authority is in law the knowledge of the principal. *Mackey v. Board of County Commissioners,* 185 Kan. 139, Syl. ¶ 5, 341 P.2d 1050 (1959). The question therefore becomes whether Dr. Wertzberger was Kresge's agent. Where the agency relationship is in issue, the party relying thereon to establish his claim has the burden of establishing the existence of the relationship by clear and satisfactory evidence. While the determination of what constitutes agency and whether there is any competent evidence reasonably tending to prove its existence is a question of law, the weight to be given evidence and the resolution of conflicts therein are functions of the trier of facts. *Highland Lumber Co., Inc. v. Knudson,* 219 Kan. 366, 371, 548 P.2d 719 (1976).

The trial court relied on the fact that the doctor was not acting in any supervisory or representative capacity for Kresge and that Kresge exercised no control over him. Ordinarily, a doctor is an independent contractor and not an agent. 3 Am. Jur. 2d, Agency § 13, p. 427; 2A C.J.S., Agency § 12, p. 574, n. 68. An independent contractor is not an agent and there is no imputation of knowledge in such a relationship. 3 C.J.S., Agency § 436, p. 303, n. 65.

Cases cited by Kresge are inapposite. *Johnson v. Skelly Oil Co.,* 180 Kan. 275, 303 P.2d 172 (1956), involved the question of whether the employer had paid compensation by furnishing medical treatment within 120 days of the filing of a claim. The employer argued that it had not since the doctor that the employee had seen was not its employee. The evidence revealed that the doctor treated cases for the employer although he was not on a retainer or on the payroll, and was compensated by-the-case. It appeared that the employer's superintendent had advised the employee to "see the doctor." It was held that the employer had furnished medical care. The case is not authority that such a doctor is an agent of the employer. In *Langley v. Navajo Freight Lines, Inc.,* 70 N.M. 34, 369 P.2d 774 (1962), the injury was discovered by a doctor who filled in an insurance form which was then given to the employee's immediate supervisor. Notice was found, but not, it would seem, on the basis of notice to the *doctor.* In *Hester v. Westchester General Hospital,* 260 So. 2d 505 (Fla. 1972), the employee was a nurse and she gave immediate notice to her supervisory nurse who was found to be in a supervisory or

representative capacity. Notice was found. In *Phillips v. Helm's Inc.,* 201 Kan. 69, 439 P.2d 119 (1968), the employee reported the accident to the acting foreman. It was said that notice to an immediate superior was sufficient as notice to the employer.

In this case the knowledge that the employer had of the claimant's condition as of June 23, 1975, was based on Dr. Wertzberger's report and release to return to work: "This is to certify that Ms. Hinton has been under my care and treatment for contusion of back and may return to work on June 23, 1975."

Here the employer failed to produce evidence that it filed a Form 88 with the Fund notifying the Fund that the claimant was a handicapped person as defined by K.S.A. 1974 Supp. 44-566, or that it had actual notice of the condition (spondylolysis) discovered by Dr. Wertzberger in May of 1975.

The trial court's decision is affirmed.