(609 P.2d 687)

No. 50,832

LESLIE R. SPENCER, SR., *Claimant,* v. DANIEL CONSTRUCTION COMPANY, *Respondent-Appellee,* and UNITED STATES FIDELITY & GUARANTY COMPANY, *Insurance Carrier-Appellee,* and KANSAS WORKMEN'S COMPENSATION FUND, *Appellant.*

Petition for review denied June 20, 1980.

Opinion filed April 18, 1980.

*Gary L. Jordan,* of Ottawa, for appellant.

*J. Eugene Balloun,* of Payne & Jones, Chartered, of Olathe, for appellees.

Before FOTH, C.J., ABBOTT and MEYER, JJ.

ABBOTT, J.: The Kansas Workmen's Compensation Fund (Fund) appeals from an order apportioning the cost of a settlement on the basis of 90 percent against the Fund and 10 percent against the respondent and insurance carrier. The claimant is not involved in this appeal.

The claimant met with personal injury by accident to his lower back on July 30, 1975, and again on August 22, 1975, while working for his employer. The claimant filed two separate claims for compensation which were consolidated for hearing. A preliminary hearing was conducted and temporary total disability

was awarded. A formal hearing on the claims was then held. Before an award was made, however, the parties settled the claims but specifically reserved the question of the Fund's liability for future determination. Subsequently, the workmen's compensation examiner ruled that the Fund should reimburse the respondent's insurance carrier 90 percent of the settlement award which the insurance carrier had paid pursuant to the settlement award. No director's review was requested and on appeal the district court judge adopted the findings and award of the examiner.

The Fund now appeals, contending the district court erred in determining that the claimant was retained by the respondent-employer in its employ after the first accident on July 30, 1975, with knowledge that he was a "handicapped employee" as required by K.S.A. 1975 Supp. 44-567, and further that the court erred in apportioning the award in the manner it did.

The Fund first contends that it is not liable for any of the settlement award because the evidence fails to show that respondent, Daniel Construction, retained claimant in its employ after the first accident knowing that he was a handicapped employee as required by K.S.A. 1975 Supp. 44-567. If the claimant meets the definition of a handicapped employee, it must be because of the July 30, 1975, accident. The claimant testified that he hurt his back on July 30, 1975, when he tried to pick up a 4-inch I-beam that was about 70 feet long and weighed approximately 250 pounds. At that time he experienced pain in his lower back around his right hip and down his right leg. The claimant testified that on August 22, 1975, he was carrying a long chain weighing 75 to 100 pounds on his shoulder. As he was carrying it down two flights of steps, he felt his back give out again. When he got to the bottom of the steps and turned, he went down to his knees. He testified that the pain in his back was in exactly the same place it had been since the July 30 accident, although now it was more severe. He also testified that this was the first time his leg had given way since the July 30 accident, but it had felt weak since that time.

A "handicapped employee" is defined in K.S.A. 1975 Supp. 44-566(b) as:

"[O]ne afflicted with or subject to any physical or mental impairment, or both, whether congenital or due to an injury or disease of such character the impairment constitutes a handicap in obtaining employment or would constitute a handicap

in obtaining reemployment if the employee should become unemployed and his handicap is due to any of the following diseases or conditions:

. . . .

"17. Any other physical impairment, disorder or disease, physical or mental, which is established as constituting a handicap in obtaining or in retaining employment."

The fact that an employee suffers from a handicap within the meaning of K.S.A. 1975 Supp. 44-566 does not in and of itself operate to impose liability on the Fund, for the employer has the burden of proving that it *knowingly* retained a handicapped worker. *Hinton v. S. S. Kresge Co.,* 3 Kan. App. 2d 29, Syl. ¶ 2, 592 P.2d 471 (1978), *rev. denied* 225 Kan. 844 (1979). Furthermore, the burden of proof of whether an impairment is of such a character that it constitutes a handicap in obtaining employment rests with the party claiming that a handicap exists, here the duty of respondent. 3 Kan. App. 2d 29, Syl. ¶ 3. The Fund does not contend that respondent Daniel Construction had no knowledge of the July 30, 1975, accident. Claimant testified that he informed his foreman of the injury the day of the accident. Knowledge obtained by an agent within the scope of his authority is in law the knowledge of the principal. *Mackey v. Board of County Commissioners,* 185 Kan. 139, Syl. ¶ 5, 341 P.2d 1050 (1959). Notice of an accident given by an employee to his foreman is sufficient notice to the employer. *Phillips v. Helm's Inc.,* 201 Kan. 69, 439 P.2d 119 (1968). Moreover, claimant here testified that at one point the foreman's supervisor gave claimant instructions to take it easy and do no heavy lifting. The Fund argues that respondent and insurance carrier failed to sustain their burden of proof to show respondent's knowledge that claimant was a "handicapped employee" following the July 30, 1975, accident. As legal authority, the Fund directs this Court to language found in *Hinton v. S. S. Kresge Co.,* 3 Kan. App. 2d at 33-34:

"The import of [the trial court's] finding is that knowledge of the earlier injury was not equivalent to knowledge that the claimant was handicapped.

"Under K.S.A. 1974 Supp. 44-567, the employer has the burden of proof that he 'knowingly' retained a 'handicapped employee.' K.S.A. 1974 Supp. 44-566(*b*) defines 'handicapped employee' as one afflicted with an impairment 'of such character the impairment constitutes a handicap in obtaining employment.' Whether a particular impairment such as the May 23rd injury is of such character is clearly a question of fact. Since the employer (Kresge) is the party claiming that the May 23rd injury, in itself, caused the claimant to be a handicapped employee, the burden is on it to prove such to be the case. *The only evidence Kresge points to is the fact that claimant was injured, required medical treatment, and was off the*

*job for four weeks.* The court found that this was not enough to constitute claimant a handicapped employee. This, in effect, is a negative finding. The effect of a negative finding by a trial court is that the party upon whom the burden of proof is cast did not sustain the requisite burden. Absent arbitrary disregard of undisputed evidence, the finding of the trial judge cannot be disturbed. *Jennings v. Speaker, Executrix,* 1 Kan. App. 2d 610, 571 P.2d 358 (1977).

"Kresge argues that it only needs to know the general nature of the employee's impairment, not the precise medical terminology and cites *Hardwick v. General Motors Corporation,* 206 Kan. 182, 476 P.2d 244 (1970). In that case, the employee had suffered a back injury in a non-work related accident. X-rays after this accident revealed that the employee had a congenital back defect, independent of any injury sustained in the accident. The employer then filed notice with the director that the employee was 'handicapped.' The employer claimed it did so on the basis of the congenital defect. The employee was injured at work and filed a claim. The examiner, director and trial court found that the Fund was not liable because the employee was recovered from the first injury, and it therefore did not contribute to the second. The Supreme Court reversed, saying that the medical evidence established that the congenital defect contributed to the second injury. The case is of no help to Kresge here. First, it has no relevance to whether Kresge has met its burden of proof that the May 23rd injury was enough to constitute claimant a handicapped employee. Second, if Kresge is arguing that its knowledge of the May 23rd injury is sufficient as knowledge that claimant had a 'back injury' to also be knowledge of the spondylolysis, the case is of no support. The court in *Hardwick* apparently was persuaded that the employer's notice to the director that the employee there had a 'physical deformity—low back disorder' was based on knowledge of the congenital defect, *not* simply the injury.

"Kresge failed in its burden of proof that the May 23rd injury, independent of the spondylolysis, constituted claimant a 'handicapped employee,' thus the Fund cannot be liable on that basis." (Emphasis supplied.)

In *Hinton,* there was a negative finding by the trial court; thus, the appellate court was faced with a scope of review requiring that the trial court be affirmed absent arbitrary disregard of undisputed evidence. Here, the trial court found the claimant suffered an impairment as a result of the July 30, 1975, accident. Although the examiner did not use the statutory term "handicapped employee," the import of his finding is that the claimant was a "handicapped employee," and such a finding is inherent in the subsequent finding that apportioned 90 percent of the cost of the award to the Fund. See *Stockman v. Goodyear Tire & Rubber Co.,* 211 Kan. 260, 262, 505 P.2d 697 (1973). In other words, the apportionment statute (K.S.A. 1975 Supp. 44-567) could not have been operational without a finding that claimant's employer had knowledge that claimant was a handicapped employee. Whether an impairment is of such a character that it constitutes a handicap in obtaining employment is a question of fact. *Hinton v. S. S.*

*Kresge Co.,* 3 Kan. App. 2d 29, Syl. ¶ 3. The question thus becomes whether or not there is substantial competent evidence to support the trial court's implied finding of knowledge. *Oates v. Post & Danley Truck Lines,* 3 Kan. App. 2d 337, 339-40, 594 P.2d 684 (1979). In *Oates,* this Court held that a determination as to knowledge must be made on a case-by-case basis and affirmed an award against the Fund on the basis that it was irrelevant that the worker failed to show continuing manifestations of the injury and that he was able to return to work at full pay. The claimant in *Oates* had previously suffered a cerebral vascular accident, which is specifically set out as a handicap in K.S.A. 1975 Supp. 44-566(*b*)(11). The claimant in this case, however, must fall under the general category set forth in subparagraph (*b*)(17).

In *Grounds v. Triple J Constr. Co.,* 4 Kan. App. 2d 325, 606 P.2d 484 (1980), this Court found the evidence sufficient to support the trial court's finding that the employer had the requisite knowledge of handicap, because an officer of the employer corporation knew the claimant construction worker occasionally wore a back brace and had experienced back problems. Commentators have stated that it is not necessary for the employer to have known in medical terms exactly what the employee's prior condition was in order to invoke the use of the Fund. 2 Larson, Workmen's Compensation Law § 59.33 (1976).

Here, claimant's employer knew that he had injured his back. Claimant worked regularly with heavy pipe and was required by the very nature of his work to bend, stoop and lift heavy objects. He had the classic symptoms of a herniated disc; *i.e.,* low back pain, with pain in his right hip radiating down his right leg. He was under medical treatment and missed three nonconsecutive days' work during the three-week period due to the injury. He was advised by his supervisor not to bend, stoop or lift, and to do only light work such as he could. It is unrealistic to say that a worker who does heavy construction work and complains of these symptoms does not have a physical impairment that constitutes a handicap in obtaining or in retaining employment. If he were to tell a prospective employer in the heavy construction business about his symptoms, he would not be hired; and his own supervisor warned claimant that he might be terminated if he reported his injury through proper channels. When viewed in the liberal manner in which we are required to view the statute (*Leiker v.*

*Manor House, Inc.,* 203 Kan. 906, 913-914, 457 P.2d 107 [1969]; Woodin, *Workmen's Compensation—The Workmen's Compensation Fund,* 24 Kan. L. Rev. 641, 643 [1976]), claimant's employer had sufficient knowledge concerning claimant's back injury to satisfy the statute and to support the trial court's implied finding of sufficient knowledge of handicap on the part of claimant's employer.

The Fund's next complaint, that the examiner and district judge erred in apportioning the cost of the settlement 90 percent to the Fund and 10 percent to the respondent and insurance carrier, requires us to reverse and remand this case for additional findings, because the findings here are insufficient to permit meaningful appellate review, and the record is inconsistent with a presumption that the trial court made findings sufficient to support the judgment. See *Burch v. Dodge,* 4 Kan. App. 2d 503, 608 P.2d 1032 (1980).

Claimant filed two separate claims for two separate accidents. Prior to the first accident on July 30, 1975, he had no preexisting physical impairment that is in any way involved in this case. Thus, the respondent and insurance carrier are solely responsible for any award due to claimant as a result of the first injury.

The medical evidence consists of the depositions of three board certified orthopedic surgeons. Dr. Peter Boylan was claimant's treating physician. The claimant failed to mention the first accident to Dr. Boylan. Upon being informed of the first accident, and in response to hypothetical questions, Dr. Boylan expressed his opinion that claimant's physical problems "were all part of the same injury and that this second episode on August 22nd would just be an exacerbation of the previous injury that had not subsided . . . ." As we read Dr. Boylan's testimony, he was of the opinion that the vast majority of claimant's physical condition was a result of the first accident and only a small percent was a result of the second one, estimating 90 percent due to the original accident and 10 percent due to the one in August.

At the request of claimant's attorney, Dr. Nathan Shechter examined claimant three times preparatory to expressing his expert opinion. It was his opinion that the first accident was sufficient to herniate a disc; that claimant's symptoms from the first accident were consistent with a herniated disc and the probabilities are that it did herniate at the time of the first

accident. When later asked, "You do feel the first accident caused the herniation?" he replied, "I think so, yes." He further expressed his opinion that the second accident would not have happened but for the first one.

Dr. C. L. Francisco testified on behalf of the respondent. He expressed his opinion that the first accident was sufficient to have caused a disc to go out, and he would "possibly" attribute 80 or 90 percent of the disability to the first accident and 10 to 20 percent to the second. He also testified he doubted that the claimant would have had the difficulty he did after the second incident if it had not been for the first accident.

Claimant consistently took the position in the administrative hearings that two awards should have been made, and the Fund maintained that position in the district court. The employer argues that since the examiner made only one award, he found that only one injury occurred. We deem it immaterial that a single award was made to claimant at the settlement hearing. Claimant's claim was a compromise settlement and the employer and the Fund specifically reserved the question now before us. It was permissible and proper for the examiner to make one award to claimant and to reserve ruling on any issues between the Fund and the employer. The examiner's error lies in failing to make any findings regarding how much of the settlement was payable as a result of the first injury.

Oftentimes, several compensable injuries are paid out in one award and no distinction is made regarding how much compensation is being paid for each claim. See *Day and Zimmerman, Inc. v. George,* 218 Kan. 189, 542 P.2d 313 (1975); *Kuhn v. Grant County,* 201 Kan. 163, 439 P.2d 155 (1968). These instances are distinguishable from the situation here, however, since in *Kuhn* the Fund was not a party to the action and in *Day* neither of the consolidated injuries was the preexisting impairment upon which Fund liability was premised. This distinction, though not important to the claimant since he has received his full payment for both claims, is crucial for the Fund.

*Day and Zimmerman, Inc. v. George,* 218 Kan. 189, is instructive. There, the worker was first injured by accident on October 14, 1970. He filed a claim, and before an award could be entered the worker was injured again in successive accidents which prevented him from working. The worker's award for his first

injury was entered in the amount of $13.49 per week for 392.14 weeks based upon a finding of 20 percent permanent partial general body disability. The worker subsequently filed an application for review, seeking to increase his first award on the basis of increased disability. The worker's employer filed an application for hearing on the second series of accidents and also filed a motion to implead the Fund on the basis of the first injury. The examiner found that the additional two injuries would not have occurred but for the preexisting disability, and that starting at the time of the last accident the worker was entitled to receive $56 per week temporary total disability for an indefinite period not to exceed 415 weeks. The Kansas Supreme Court denied the district court's modification of the first award and fashioned an apportionment whereby the worker received $56 per week—$13.49 from the employer for the disability under the first award and the balance of $42.51 from the Fund. After the employer had completely paid off the first award, the Fund would then begin to pay the full $56 per week. In other words, although the Fund was found to be 100 percent liable for the worker's present overall disability, it still was not required to pay any part of the compensation due solely for the preexisting impairment.

In view of the medical testimony that the disc herniated when the first accident occurred, the examiner should have considered the two accidents separately. He must determine the percentage of disability attributable to the first accident and assess liability for that award against the employer. The Fund may not be held liable for any part of the award for the first accident and the payment of that entire award is the responsibility of the employer. *Day and Zimmerman, Inc. v. George,* 218 Kan. 189. The Fund is liable for only the proportion of the cost of the award attributable to the second injury and then only to the extent the second injury was contributed to by the preexisting impairment. K.S.A. 1975 Supp. 44-567(*a*)(2).

The Fund takes the position the examiner and district judge have already determined that 90 percent of the award is attributable to the first accident. This argument assumes that the examiner's finding that 90 percent of the claimant's present disability is attributable to the first injury is equivalent to a finding that 90 percent of the monetary award for both injuries combined would be the same amount as the monetary award for the first injury if

such an award had been made. This assumption is erroneous. Evidence existed in the record from which a trial judge conceivably could have found that 90 percent of claimant's injury is attributable to the first accident, but that specific finding was not made and attempting now to say that the actual finding is equivalent to that suggested by the Fund is somewhat like comparing apples and oranges.

· On remand, after making an award for the first injury, the examiner should consider the second accident, then determine the percentage of disability and assess liability for it, giving due consideration to K.S.A. 1975 Supp. 44-566. The examiner should also give the Fund the benefit of K.S.A. 1975 Supp. 44-510a (the anti-pyramiding statute) in computing liability for the award. This statute provides for a credit against compensation for permanent disability if such disability was contributed to by a prior permanent disability for which compensation was paid or is collectible. The credit shall consist of the extent, expressed as a percentage, by which the prior permanent disability contributes to the overall disability following the later injury. The amount of the credit is figured by applying the percentage of contribution for the prior disability to disability compensation resulting from the later injury. The resulting figure is then subtracted from the amount of weekly permanent disability compensation resulting from the later disability. The product represents the reduced rate of compensation. The credit, however, is not applicable to temporary total disability resulting from the later injury. Moreover, the credit is limited to only those weeks of prior permanent disability for which compensation is paid or is collectible, which occur subsequent to the date of the later injury. The credit terminates, in other words, on the date that compensation for the prior disability terminates and compensation for weeks due after such date is paid at the unreduced rate.

In our opinion, K.S.A. 1975 Supp. 44-567, which governed the extent of Fund liability, contemplated the use of K.S.A. 1975 Supp. 44-510a in the computation of the award due the worker from which the apportionment is then taken. Any other construction would result in an employee getting more compensation if the Fund were properly impleaded than he would if the Fund were not a party. The legislature appears to have intended only a shifting of the responsibility to the Fund rather than to have

intended an increase in the total amount of compensation to be paid.

Reversed and remanded with directions.