(698 P.2d 392)

No. 57,179

OLDRICH BROZEK, *Claimant,* v. LINCOLN COUNTY HIGHWAY DEPART-
MENT, COMMERCIAL UNION INSURANCE COMPANY, *Appellees,* and
KANSAS WORKERS' COMPENSATION FUND, *Appellant.*

Opinion filed April 18, 1985.

*John C. Nodgaard* and *Stuart R. Collier,* of Arn, Mullins, Unruh, Kuhn &
Wilson, of Wichita, for appellant.

*James T. McIntyre* and *Casey R. Law,* of Turner & Boisseau, Chartered, of
Great Bend, for appellees.

Before ABBOTT, P.J., PARKS and MEYER, JJ.

PARKS, J.: This is an appeal by the Workers' Compensation Fund from the district court's judgment holding it liable to the employer's insurer for the entire amount of compensation paid its injured employee. The employee's claims for compensation were settled and he is not a party to this appeal.

The claimant, Oldrich Brozek, worked as a member of the Lincoln County Highway Department road maintenance crew for fifteen years. On October 28, 1981, he was injured when he fell four or five feet from a bridge, landing on his buttocks. Brozek was taken to the hospital where he was examined, admitted and diagnosed as having sustained a compression fracture of the L1 vertebra. After about a month of rest, claimant was released to return to light duty at work. Brozek returned to work but his duties were principally confined to driving a truck. Whenever he attempted more strenuous work, claimant suffered back pain. He therefore decided to consult a specialist, Dr. Sloo.

Dr. Sloo examined Brozek on March 22, 1982, and admitted him to the hospital for lab work and a myelogram. The doctor confirmed the earlier diagnosis and assessed claimant's disability as a 15% functional impairment of the body as a whole. Sloo prescribed conservative treatment. When he saw Brozek on May 19, Sloo believed the fracture was healed and released claimant for his regular heavy work.

On June 22, 1982, Brozek reinjured his back while swinging a sledge hammer to knock down old bridge banisters. During the work, Brozek began having severe back pains and swelling in the stomach. The claimant left work and has not returned to the job. He filed a second workers' compensation claim based on this second accident.

When Dr. Sloo examined claimant on July 9, he concluded that Brozek could never again perform heavy labor and assigned him a 100% work disability. The doctor testified that the June 22 injury would not have occurred had it not been for the compression fracture suffered in the earlier accident but he maintained that the second incident was not a separate injury from the first. Sloo stated that he could detect no objective changes in the claimant's back condition and that in his opinion, the June incident made an existing condition symptomatic but was not a new injury to the back. Sloo acknowledged that an individual

may suffer an injury without manifesting any objective proof of that injury.

The claimant and the employer's insurer entered settlement negotiations and reached an agreement to settle the claims arising out of both the October 28, 1981, and the June 22, 1982 accidents. The Fund was impleaded for the settlement hearing where it made no objection to the settlement but reserved any question concerning its obligation to reimburse the employer's insurer. The settlement provided that claimant would receive $9,709.61 based on a 15% permanent partial disability for the first accident and a lump sum payment of $5,616 plus $72,000 in monthly payments of $300 each for the injury sustained in the second accident. The cost of the annuity to generate the monthly payments was $28,159.70.

The Fund and the employer's insurer then litigated the issue of the Fund's liability for reimbursement of the amount paid by the employer's insurer as settlement for the second injury. The administrative law judge (ALJ) held that the claimant sustained two compensable accidents and was a handicapped worker at the time of the second injury. Since there was medical testimony that the second injury would not have occurred but for the first accident, the ALJ ordered complete reimbursement of the $28,159.70 cost borne by the employer's insurer for the second injury. Upon director's review this decision was reversed. The director held that while the claimant's back condition became more symptomatic after the June incident, there was no evidence that he suffered any new permanent disability. Since the director found there was no second injury there was no liability assessed against the Fund. On appeal, the district court reversed the director and reinstated the decision of the administrative law judge. The Fund now appeals to this court.

The Workers' Compensation Fund is obligated to reimburse employers for liabilities incurred as a result of injury to handicapped employees knowingly retained by an employer. K.S.A. 1984 Supp. 44-567. Thus, for the respondent to shift a portion of its liability to the Fund, it has to establish that the employee Oldrich Brozek became handicapped by the October 28, 1981, accident, was retained despite the employer's knowledge of this handicap and then that Brozek sustained a second injury June 22, 1982, for which compensation should be made by the Fund. *Spencer v. Daniel Constr. Co.*, 4 Kan. App. 2d 613, 619, 609 P.2d

687, *rev. denied* 228 Kan. 807 (1980). The Fund has not contested either claimant's status as a handicapped worker after the 1981 accident or the employer's knowledge of this handicap. In fact, the only disputed issue in this litigation has been the existence of a second injury and the amount of any reimbursement which might be due if such a second injury did occur.

Arguing from the opinion testimony of Dr. Sloo, the Fund contends that the pain manifested by claimant's back after the June 22 incident was simply a symptom of the preexisting injury and not itself a separate injury. The respondent, on the other hand, argues that since claimant was able to return to work and Dr. Sloo believed his previous injury was healed to the point that he could resume his normal activities, the second accident, which left claimant completely unable to perform his job, caused a reinjury of the back.

The existence of an injury is a factual question which must be upheld on appeal if supported by substantial competent evidence. Furthermore, the evidence must be considered in the light most favorable to the prevailing party. *Hampton v. Professional Security Co.*, 5 Kan. App. 2d 39, 40, 611 P.2d 173 (1980). An injury is defined in K.S.A. 1984 Supp. 44-508(e) as any lesion or change in the physical structure of the body, causing damage or harm thereto, so that it gives way under the stress of the worker's usual labor. It is not essential that such lesion or change be of such character as to present external or visible signs of its existence. An accident is the event or manifestation of force which precipitates injury. K.S.A. 1985 Supp. 44-508(d).

The evidence indicated that prior to the sledge hammer incident, claimant experienced periodic back pain but was able to continue working. After June 22, he suffered from swelling and disabling pain which has since kept him from working at the job. Viewed from the light most favorable to claimant, this evidence is sufficient to support the conclusion that the claimant suffered a change in the physical structure of his body. The testimony of Dr. Sloo may well reflect a medical viewpoint of claimant's condition but it does not control the factual issue of whether a compensable injury has been sustained pursuant to the workers' compensation law.

We conclude that the district court did not erroneously apply the definition of "injury" and find that the evidence of pain and

swelling experienced by claimant on June 22 provided substantial competent evidence that a second injury was sustained.

Once it has been determined that a knowingly retained handicapped worker has sustained an injury, the amount of the Fund's liability must be determined. The general rule is that if the ultimate injury or disability would not have occurred but for the preexisting handicap, the Fund is liable for the entire amount of the award paid for the subsequent injury. On the other hand, if the injury or disability probably or most likely would have occurred regardless of the handicap, but was contributed to by it, the Fund is only liable for that portion of the award for the subsequent injury which is attributable to the preexisting impairment. K.S.A. 1984 Supp. 44-567.

In this case, Dr. Sloo testified that the second injury would not have occurred had it not been for the occurrence of the first injury. The Fund does not dispute the conclusion that this testimony is sufficient to render it liable for the entire award paid because of the second injury but it does dispute the cost which may actually be attributed to the second injury. Since the claimant and the employer entered into a structured settlement which assessed some of the total settlement against the first injury and the balance against the second injury, the ALJ and district court simply adopted the amount of the settlement for the second injury as representing the liability of the Fund. The Fund contends that the apportionment accomplished in settlement of the two claims should not be determinative of the amount of its liability. It argues that the district court must still make findings concerning the extent of claimant's final disability which is attributable to the first injury and that resulting from the second. In addition, the Fund contends that even if the amount of the settlement figure agreed by the claimant and respondent to be due to the second injury is binding or appropriate, it is entitled to a credit under K.S.A. 44-510a for overlapping benefits.

In *Spencer v. Daniel Constr. Co.*, 4 Kan. App. 2d at 619-22, this court was faced with a similar situation. The claimant suffered two back injuries less than a month apart and filed two separate compensation claims. The Fund was impleaded on the ground that the claimant became handicapped as a result of the first injury. The respondent and the claimant negotiated a settlement of both claims and the Fund reserved its right to contest any

apportionment against it. The settlement did not apportion the total amount agreed to between the two accidents and the examiner entered a single award based on the settlement. When the issue of the liability of the Fund was subsequently litigated before the examiner and the district court, no findings were made regarding the portion of the settlement which was payable as a result of the first injury. Instead, the court apportioned 90% of the total settlement award against the Fund apparently concluding that the medical testimony indicating that 90% of the ultimate *disability* was contributed to by the preexisting handicap meant that the same proportion of the *cost of the award* should be assumed by the Fund.

This court initially held that the district court erred in failing to hold the employer and its insurer totally liable for the amount of the award attributable to the first injury. The court then discussed the manner in which the case should have been addressed by the district court and the findings which must be made on remand, stating as follows:

"In view of the medical testimony that the disc herniated when the first accident occurred, the examiner should have considered the two accidents separately. He must determine the percentage of disability attributable to the first accident and assess liability for that award against the employer. The Fund may not be held liable for any part of the award for the first accident and the payment of that entire award is the responsibility of the employer. *Day and Zimmerman, Inc. v. George,* 218 Kan. 189. The Fund is liable for only the proportion of the cost of the award attributable to the second injury and then only to the extent the second injury was contributed to by the preexisting impairment. K.S.A. 1975 Supp. 44-567(a)(2).

"The Fund takes the position the examiner and district judge have already determined that 90 percent of the award is attributable to the first accident. This argument assumes that the examiner's finding that 90 percent of the claimant's present disability is attributable to the first injury is equivalent to a finding that 90 percent of the monetary award for both injuries combined would be the same amount as the monetary award for the first injury if such an award had been made. This assumption is erroneous. Evidence existed in the record from which a trial judge conceivably could have found that 90 percent of claimant's injury is attributable to the first accident, but that specific finding was not made and attempting now to say that the actual finding is equivalent to that suggested by the Fund is somewhat like comparing apples and oranges.

"On remand, after making an award for the first injury, the examiner should consider the second accident, then determine the percentage of disability and assess liability for it, giving due consideration to K.S.A. 1975 Supp. 44-566. The examiner should also give the Fund the benefit of K.S.A. 1975 Supp. 44-510a (the anti-pyramiding statute) in computing liability for the award. This statute pro-

vides for a credit against compensation for permanent disability if such disability was contributed to by a prior permanent disability for which compensation was paid or is collectible. The credit shall consist of the extent, expressed as a percentage, by which the prior permanent disability contributes to the overall disability following the later injury." *Spencer,* 4 Kan. App. 2d at 620-21.

The holding in *Spencer* indicates that regardless of the terms of the settlement, the apportionment of the award between the Fund and the respondent must be based on the actual amount of the disability which is attributable to the second injury as well as the extent that the handicap contributed to the second injury. Similarly, in this case the fact that the settlement assessed some of the award to the first accident and some to the second should not control the apportionment of liability to the Fund. Since the uncontradicted medical testimony indicated that but for the first injury the second most probably would not have occurred, the percentage of the Fund's liability for the second injury would have to be fixed at 100% (K.S.A. 1984 Supp. 44-567[a][A]), but the dollar amount of the award attributable to the second injury would still have to be determined.

Dr. Sloo testified that claimant suffered a permanent partial functional disability of 15% after the first accident and that this disability was not increased by the second accident. Moreover, despite the fact that work disability is a judicial rather than a medical concept, the doctor also testified that Brozek's work disability was 100% after the second injury. The court apparently adopted this work disability figure as its own stating that claimant's work disability "went up to 100%." Since a claimant may recover compensation based on either work or functional disability, whichever is greater, (*Desbien v. Key Milling Co.,* 3 Kan. App. 2d 43, 45, 588 P.2d 482 [1979]), the court should have compared disability figures before and after the second injury to determine the proportion of the total cost of the settlement which is attributable to the second injury. The functional disability rating did not change so the difference in work disability would be controlling. Since the court made no finding concerning work disability after the first accident, there is no basis for comparison. Therefore, like *Spencer,* there are insufficient findings upon which review of the apportionment may be made. *Spencer,* 4 Kan. App. 2d at 618, citing *Burch v. Dodge,* 4 Kan. App. 2d 503, 608 P.2d 1032 (1980).

The respondent argues that the absence of findings indicates

that the court found the apportionment effected by the structured settlement to be reflective of the evidence. However, the settlement provided that $9,709 of the total award was due to the first injury while an annuity costing the employer $28,160 was assessed as resulting from the second injury. The medical testimony, if anything, certainly indicated that the major portion of the final disability was due to the injury sustained in the first accident. Therefore, it would seem that the employer, not the Fund, should bear the majority of the financial responsibility for the award. We cannot assume that the court's factual findings would parallel the apportionment made by the settlement.

The Fund also argues that any liability it might have to the employer for compensation paid for the second injury should have been reduced by a credit as provided in K.S.A. 44-510a. As explained in *Spencer*, this credit prevents the collection of duplicative compensation for a permanent disability. If a worker suffers a compensable injury which renders him handicapped and later sustains a new injury contributed to by his handicap, he will not be permitted to stack permanent disability payments as if the injuries were unrelated or compensated from different sources. The precise means of calculating the allowable credit is described as follows:

"The amount of the credit is figured by applying the percentage of contribution for the prior disability to disability compensation resulting from the later injury. The resulting figure is then subtracted from the amount of weekly permanent disability compensation resulting from the later disability. The product represents the reduced rate of compensation. The credit, however, is not applicable to temporary total disability resulting from the later injury. Moreover, the credit is limited to only those weeks of prior permanent disability for which compensation is paid or is collectible, which occur subsequent to the date of the later injury. the credit terminates, in other words, on the date that compensation for the prior disability terminates and compensation for weeks due after such date is paid at the unreduced rate." *Spencer*, 4 Kan. App. 2d at 621.

This credit is applicable to reduce the liability of the Fund standing in the shoes of the employer, despite the fact that the employer may not actually have reaped the benefit of the credit in its settlement. Therefore, once the portion of the Fund's liability for the monetary amount paid by the respondent is figured, it should also be reduced by the credit permitted for the presumed overlapping of payments.

From *Spencer*, we learn that despite the fact that the respon-

dent settles with the claimant, the workers' compensation fact-finders are not relieved of responsibility to determine the amount of an appropriate award when a second injury is involved. The Fund may not be held liable to the respondent based on figures settled by the respondent without reference to the actual relationship between the award and the contribution of the preexisting handicap. In addition, the fact that the settlement is not structured in weekly payments should not deprive the Fund of the right to a credit for overlapping disabilities.

Accordingly, the judgment of the district court concerning the occurrence of a second injury is affirmed. The judgment assessing the cost of the annuity in the amount of $28,159.70 against the Fund is reversed and remanded with directions to determine the amount of liability for the second injury and whether a credit should be allowed in accordance with the discussion in this opinion.